# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, | Civil Action No. 5:24-cv-01000 |
| Plaintiff, | |
| vs. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, and MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, | AMAZON'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| Defendants. | |

## MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION

**HUNTON ANDREWS KURTH LLP**

s/Amber M. Rogers
Amber M. Rogers
TX State Bar No. 24056224
arogers@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-979-3000

Kurt G. Larkin
*Pro hac vice forthcoming*
klarkin@huntonak.com
Riverfront Plaza, East Tower
951 East Byrd Street, Suite 700
Richmond, VA 23219
Telephone: 804-788-8200

Plaintiff Amazon.com Services LLC ("Amazon") respectfully moves for an order temporarily restraining and preliminarily enjoining Defendants National Labor Relations Board ("NLRB"), its General Counsel Jennifer Abruzzo ("Abruzzo"), Chairperson Lauren M. McFerran ("McFerran"), and Members Marvin E. Kaplan ("Kaplan"), Gwynne A. Wilcox ("Wilcox"), and David M. Prouty ("Prouty") from continuing to process ongoing administrative proceedings against Amazon in NLRB Cases 29-CA-310869 and 29-RC-288020

## I.     INTRODUCTION

"One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts. Our Constitution was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010).

Amazon brought suit in this Court seeking to restrain Defendants from pursuing unconstitutional administrative proceedings. Defendants acted as prosecutors in authorizing an improper injunction to be brought against Amazon on the eve of a March 2022 NLRB election. The irregular litigation of that injunction interfered with the free and fair choice of the employee voters and was the basis of Amazon's first objection filed challenging the election results. Yet, the same Board Members who acted as prosecutors authorizing that action recently acted as judges, denying review of the very objection for which they were responsible. Absent the Court's immediate intervention, Defendants will again sit in judgment of a pending NLRB complaint against Amazon arising out of the improperly certified election results. This violates bedrock principles of separation of powers, denies Amazon due process, and robs employees of the right to vote in a free and fair union election.  Defendant Board Members occupy this improper dual role of accuser and decider with impunity because they are unconstitutionally insulated from

removal from office by the President—an infirmity recently recognized by this Court and another in this Circuit in enjoining similar NLRB proceedings. Finally, Defendant Abruzzo seeks compensatory financial remedies in her pending complaint against Amazon, which are neither authorized by statute nor permitted by the Seventh Amendment absent a jury trial.

All of the elements required to justify Amazon's request for immediate relief are present here in spades. First, Amazon is likely to succeed on the merits of its constitutional claims that (1) Defendant Board Members are unconstitutionally insulated from removal in contravention of Article II of the Constitution, (2) the Board seeks to adjudicate private rights without a jury trial in violation of the Seventh Amendment, and (3) the NLRB's actions against Amazon violate constitutionally mandated separation of powers and Amazon's due process rights. Second, Amazon is likely to suffer economic and constitutional harms, absent immediate relief, because it will be compelled to undergo unconstitutional proceedings before insufficiently accountable agency officials. Third, the balance of equities tips in Amazon's favor because it stands to be stripped of its constitutional rights while Defendants stand to lose nothing. Fourth, there is an unquestioned public interest in ensuring that federal agencies comply with the requirements of the Constitution and in establishing constitutionally legitimate administrative proceedings.

Because it is likely to succeed on the merits, Amazon respectfully requests this Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction, stay or enjoin the unconstitutional administrative proceedings Amazon is being subjected to—after which Amazon is unlikely to have a chance to secure meaningful relief—and both temporarily restrain and preliminarily enjoin the Defendants from pursuing such proceedings.

## II.     BACKGROUND

Amazon operates websites and physical stores that sell books, home goods, toys, electronics, and apparel. Declaration of Tyler Grabowski ("Grabowski Decl."), at ¶ 4, attached as **Exhibit A**. Amazon facilities receive and sort packages and ship assorted products from warehouses called Fulfillment Centers. *Id* . Relevant to this action, Amazon operates a Fulfillment Center in Staten Island, New York called "JFK8." *Id*. The NLRB is currently pursuing two related administrative proceedings against Amazon that arise from a union representation election conducted at JFK8: Case 29-RC-288020 and Case 29-CA-310869. Declaration of Amber Rogers ("Rogers Decl."), at ¶ 9, attached as **Exhibit B**.

On December 22, 2021, the Amazon Labor Union ("ALU") filed a Petition seeking to represent a bargaining unit of JFK8's hourly employees (Case 29-RC-288020). *Id*. at ¶ 4. Officials from NLRB Region 29, in Brooklyn, NY, supervised an in-person election at JFK8 on March 25, 26, 28, 29, and 30, 2022. *Id*. at ¶¶ 5-6.  The April 1, 2022 tally of ballots recorded that, out of 8,325 eligible voters, 2,654 ballots were cast for the ALU, and 2,131 ballots were cast against the ALU. *Id*. at ¶ 7. On April 8, 2022, Amazon timely filed 25 Objections to the Results of the Election ("Objections"). *Id*. at ¶ 10. The Objections alleged that the ALU and NLRB Region 29 acted inappropriately and interfered with the conditions necessary for holding a free and fair election under the National Labor Relations Act ("NLRA"). *Id*.

Relevant here, the Objections included an allegation that Defendant Abruzzo, in the name of the Region 29 Regional Director, departed from NLRB practice when she initiated litigation in the U.S. District Court for the Eastern District of New York seeking a preliminary injunction under Section 10(j) of the NLRA against Amazon in connection with NLRB Case 29-CA-261755 for its alleged unlawful termination of an employee who worked at JFK8. *Id*. at ¶ 11; *see also Poor v.*

*Amazon.com Servs. LLC*, 104 F.4th 433, 438 (2d Cir. 2024). Amazon had terminated this employee in May 2020 for making vulgar and derogatory comments toward another employee. Grabowski Decl. at ¶ 6. The employee had filed an unfair labor practice ("ULP") charge on or around June 17, 2020, and NLRB Region 29 issued a complaint against Amazon on December 22, 2020. Rogers Decl. at ¶ 12. Board practice required swift action by Defendant Abruzzo at that point. *See* 10(j) Manual, Sec. 5.5. ("The Region must file the 10(j) petition within 48 hours after notice by the [Injunction Branch] that the Board has authorized the use of 10(j) relief."). Yet, the Region 29 Regional Director did not seek a Section 10(j) injunction until the eve of the election in Case 29-RC-288020, more than 23 months after the employee was discharged, 18 months after the charge was filed, and 14 months after the complaint was issued. Rogers Decl. at ¶ 11-12. Filing just days before the union election in NLRB Case 29-RC-288020, after such an extraordinary amount of time, was rather intentionally timed to improperly influence the election, creating the impression of Board assistance or support for the ALU. *See id*. at ¶ 34, Ex. 1 at 3-4 (Objection 1). In its Objection challenging this conduct, Amazon requested that the NLRB invalidate the election results and order a second election at JFK8 free from unlawful interference. *Id*. at ¶ 14.

Through a Freedom of Information Act request, Amazon recently learned that Defendants McFerran, Wilcox and Prouty—three of the four sitting Board members—voted to authorize the Defendant Abruzzo's objectionable prosecution of the Board's 10(j) proceeding against Amazon in *Poor v. Amazon.com Servs. LLC*. Rogers Decl. at ¶ 13, 37, Ex. 4. In doing so, Defendants acted as prosecutors in *Poor*.

In addition to the Objections described above, many of Amazon's other Objections were directed against the manner in which Region 29 conducted the election. *Id*. at ¶ 15.  Consequently, Amazon moved to transfer its Objections to a different Region. *Id*. On April 14, 2022, Defendant

Abruzzo chose Region 28 and transferred the case there for further processing. *Id*. at ¶ 16. On April 29, 2022, the Region 28 Regional Director issued an Order setting all 25 of Amazon's Objections for an evidentiary hearing. *Id*. at ¶ 17. The hearing was held before a Hearing Officer appointed by the Region 28 Regional Director and took place over 24 business days between June 13 and July 18, 2022. *Id*. at ¶¶ 18-19. On September 1, 2022, the Hearing Officer issued her Report on Objections, in which she recommended that all of Amazon's Objections be overruled. *Id*. at ¶ 20. On September 23, 2022, Amazon filed 893 Exceptions to the Hearing Officer's Report. *Id*. at ¶ 21.

On January 11, 2023, the Region 28 Regional Director issued a Decision and Certification of Representative, affirming the Hearing Officer's Report in all relevant respects. *Id*. at ¶ 22. He certified the ALU as bargaining representative of the Company's hourly employees at JFK8. *Id*. On February 9, 2023, Amazon filed a Request for Review with the NLRB challenging the Region 28 Regional Director's Decision. *Id*. at ¶ 23. The NLRB issued a decision denying Amazon's Request for Review in Case 29-RC-288020 on August 29, 2024. *Id*. at ¶ 24.

Because Amazon is alleging that the ALU and NLRB Region 29 interfered with the election at JFK8, Amazon denies that the ALU should have been certified as the exclusive collective-bargaining representative of any employee at JFK8.  However, due to the peculiar nature of the NLRA, Amazon has no direct right to judicial review of NLRB decisions in representation proceedings, such as Case 29-RC-288020. The U.S. Courts of Appeals only have subject matter jurisdiction over NLRB orders arising out of ULP cases, such as Case 29-CA-310865. Accordingly, Amazon cannot "appeal" the NLRB's decision in Case 29-RC-288020 to federal court. In order to obtain judicial review of its Objections, it must engage in a "technical" refusal to bargain with the ALU in order to "draw" a refusal to bargain ULP allegation. After the NLRB

has found against Amazon in such a proceeding, it may obtain judicial review of that finding in the appropriate U.S. Court of Appeals. In that proceeding, commonly referred to as a "test of certification," the Court of Appeals may review the record of both cases (RC and CA). *See, e.g., NLRB. v. Polyflex M Co.,* 622 F.2d 128 (5th Cir. 1980) (describing employer's procedure to "test the validity of the certification of the election results.").

 This technical process is already playing out in Case 29-CA-310869. While the processing of Case 29-RC-288020 was ongoing, the ALU demanded that Amazon recognize and bargain with it, notwithstanding the Company's Objections. *Id.* at ¶ 26. On April 2, 2022, the ALU requested that Amazon bargain collectively with the ALU as representative of the employees at JFK8. Grabowski Decl. at ¶ 5. Following its April 2, 2022 demand for bargaining, the ALU filed a ULP charge with Region 29 of the NLRB alleging that Amazon unlawfully refused to recognize or bargain with the Union as exclusive bargaining representative of the hourly employees at JFK8. (Case 29-CA-310869). Rogers Decl. at ¶ 27.

 On July 12, 2023, the Regional Director of NLRB Region 29 issued a Complaint in Case 29-CA-310869, alleging that Amazon unlawfully refused to bargain with the ALU at JFK8. *Id.* at ¶ 28. On August 23, 2023, Defendant Abruzzo filed a Motion to Transfer Case 29-CA-310869 to the NLRB and for Summary Judgment. *Id.* at ¶ 29.  The same day, the NLRB issued an order transferring Case 29-CA-310869 to itself, and issued to Amazon a Notice to Show Cause why the General Counsel's motion should not be granted. *Id.* at ¶ 30.  In her Motion, Defendant Abruzzo alleges that the ALU was validly declared the winner of the JFK8 election and that, by electing to pursue its Objections in Case 29-RC-288020 and choosing not to bargain with the ALU until those challenges are adjudicated, Amazon has violated the NLRA. *Id.* at ¶ 29. Defendant Abruzzo seeks an Order from the NLRB directing Amazon to recognize and bargain with the ALU as exclusive

representative of the hourly employees at JFK8. *Id*. She also seeks consequential damages of an unspecified amount against Amazon as a make-whole remedy for certain Amazon employees. *Id*. at ¶ 35, Ex. 2 at 9-10 (General Counsel requesting that the Board award "a compensatory make-whole remedy…and order [Amazon] to make the employees at issue here whole for the lost opportunity to engage in collective bargaining….").

Amazon filed a written opposition on September 14, 2023. *Id*. at ¶ 31. Amazon argued, among other things, that the NLRB could not resolve the case unless and until it ruled on Amazon's Request for Review in Case 29-RC-288020. *Id*. Now that the NLRB has denied Amazon's Request for Review in Case 29-RC-288020, Amazon anticipates that the NLRB will issue an order in Case 29-CA-310869 granting the General Counsel's Motion for Summary Judgment in the imminent future. *Id*. at ¶ 32. In fact, the NLRB issued another Notice to Show Cause on August 30, 2024, the day after the Board issued its decision in 29-RC-288020. *Id*. at ¶ 33. It provides that Amazon must file any supplemental opposition to the original Notice to Show Cause ***on or before Friday, September 13, 2024***. *Id*. at ¶ 33.  After that deadline, Defendant Board Members are poised to issue a ruling in Case 29-CA-310869.  Amazon also anticipates that Defendant NLRB Members may once again be asked by Defendant Abruzzo to authorize pursuit of a new Section 10(j) injunction in Case 29-CA-310869, this time to force Amazon to recognize and bargain with the ALU, given that case now sits before them for adjudication.

## III.   ARGUMENT

To obtain a temporary restraining order or preliminary injunction, Amazon must show: (1) it is likely to succeed on the merits of its constitutional claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7,

20 (2008). Amazon will succeed on all four elements; *Tex. v. U.S. Dep't of Homeland Sec.*, 700 F. Supp. 3d 539, 544 (W.D. Tex. 2023).

### A.  Amazon Is Likely To Succeed On The Merits Of Its Constitutional Claims

1.  <u>NLRB Board Members Are Unconstitutionally Insulated From Removal</u>

Article II of the Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The Appointments Clause gives the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2. Article II also requires the President to maintain "unrestricted removal power" over all federal officials "who wield executive power." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020).

The NLRA, in turn, grants the President the power to appoint up to five Members to the Board. *See* 29 U.S.C. § 153(a).  With the advice and consent of the Senate, the President appoints Board Members to staggered, five-year terms and designates one Member to serve as the Chairman. *Id.*  But the President may only remove Board members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

The Supreme Court has found this type of restriction on the President's power to be unconstitutional. *See Collins v. Yellen*, 594 U.S. 220, 256 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'") (quoting *Myers v. United States*, 272 U.S. 52, 135 (1926)). In *Seila Law*, the Supreme Court held that "the [Consumer Financial Protection Bureau]'s leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." *Seila Law*, 591 U.S. at 213. The Court noted that there are only two exceptions to the President's removal power: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or

administrative authority." *Seila Law*, 591 U.S. at 218; *see also Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).

These "*Humphrey's Executor*" exceptions do not apply here because NLRB Board members "wield substantial executive power." *Id*.; *see also Space Expl. Techs. Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024) ("NLRB members clearly wield substantial executive power through their administrative, policymaking, and prosecutorial authority."). The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties." 29 U.S.C. § 154. It has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. § 156, 160. The Supreme Court has made clear that even when "the activities of administrative agencies take legislative and judicial forms, they are exercises of—indeed, under our constitutional structure they must be exercises of—the executive Power." *Seila Law*, 591 U.S. at 216 n.2 (omitting internal quotations). Because Board Members exert executive authority, the President must be able to remove them without barriers.

The Supreme Court recognizes this removal power is impermissibly restrained by statutes that limit the President's removal authority, either by restricting who can remove, or limiting the basis for removal. *See Free Enter. Fund*, 561 U.S. at 495; *Seila Law*, 591 U.S. at 205; *Collins*, 594 U.S. at 249-51. In *Free Enter. Fund*, the Court invalidated a for-cause removal restriction on the members of the Public Company Accounting Oversight Board. 561 U.S. at 495–96. The officers there could be removed only for cause by officers of the Securities and Exchange Commission,

who in turn could be removed only for cause by the President. The Court held that this restriction "subvert[ed] the President's ability to ensure that the laws are faithfully executed" and was "incompatible with the Constitution's separation of powers." *Id*. at 498.

In *Space Expl*., this Court applied these principles to the NLRB. 2024 WL 3512082, at *3-4. There, this Court rejected the NLRB's argument that Fifth Circuit precedent interprets *Humphrey's Executor* to "protect[] any 'traditional independent agency headed by a multimember board.'" *Id*. at *4 (quoting *Consumers' Research v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352 (5th Cir. 2024)). Instead, it relied on Fifth Circuit precedent holding that *Humphrey's Executor* does not extend to the NLRB General Counsel because the "position is not judicial or legislative, but core to the executive function." *Id*. (quoting *Exela Enter. Sols., Inc. v. NLRB*., 32 F.4th 436, 443-44 (5th Cir. 2022)). This Court emphasized that "[l]ike the General Counsel, the NLRB Members have executive prosecutorial power as 'to petition [a] United States district court...for appropriate temporary relief or restraining order' in response to an alleged unfair labor practice." *Id*. (citing 29 U.S.C. § 160(j)). It also held that "allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*" that "the Supreme Court has repeatedly declined." *Id*.

The statutory removal restrictions imposed by the NLRA act as an unconstitutional check on the President's ability to remove NLRB Members.  Accordingly, this Court should reach the same result as it did in *Space Expl*. and conclude that Amazon is substantially likely to succeed on the merits of this claim.

> 2. The NLRB's Adjudication Of Private Rights And Legal Relief Violates The Seventh Amendment

The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury

shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy v. SEC*, 34 F.4th 446, 452 (5th Cir. 2022) (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). "The term can include suits brought under a statute as long as the suit seeks common-law-like *legal* remedies." *Id.* (emphasis added). Cases seeking legal relief "must be tried under the auspices of an Article III Court." *Granfinanciera, S.A. v. Nordberry*, 492 U.S. 33, 41 (1989). "Compensatory damages," or "monetary relief for all losses…sustained as a result of the alleged breach of…duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted).

The NLRA, in contrast, only provides for equitable relief.  It authorizes the Board to remedy ULPs through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).  The Supreme Court acknowledged in *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), that Section 10(c) permitted equitable forms of relief such as reinstatement and backpay. The Court explained, "Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." 310 U.S. at 48-49.  In other words, the purpose of Section 10(c) is to make an aggrieved party whole. The statute authorizes ***equitable*** relief. The statute does not authorize ***legal*** relief—such as compensatory damages.

Of course, the Supreme Court in *Jones & Laughlin Steel Corp.* did not consider whether the NLRA would permit far-reaching legal forms of relief such as consequential damages, because

the Board never claimed to read such authority into the statute.  But recently, and despite the fact

that the Board itself has acknowledged that legal damages are "more suited for the common law

of torts and contracts," the Board recently authorized Defendant Abruzzo and her prosecutors to

seek consequential or "compensatory" damages in ULP cases. *See Thryv, Inc.*, 372 NLRB No. 22

at *13-14 (Dec. 13, 2022), *enf. denied in part and vacated in part Thryv, Inc., v. NLRB*, Case No.

23-60132, 102 F.4th 727  (5th Cir. May 24, 2024). According to the Board, consequential damages

may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from

[a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is

unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-

of-pocket medical expenses." *Id.* at 9.  The Board claimed in *Thryv* that it was "not instituting a

policy or practice of awarding consequential damages, a legal term of art more suited for the

common law of torts and contracts. Instead, we ground our decision in the make-whole principles

of Section 10(c) of the Act." *Id.*

In actuality, the Board simply authorized the General Counsel to seek consequential

damages in future cases—such as this one—by mislabeling it equitable relief, so as to obfuscate

what it was doing.  However, the Fifth Circuit recently saw through this veil, referring to remedies

requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as

"draconian steps" and "novel, *consequential*-damages-like labor law remed[ies]." *See Thryv, Inc.*,

102 F.4th at 733, 737 (emphasis added).

The Supreme Court, in turn, recently signaled that the Board's unilateral decision to

authorize the pursuit of consequential remedies was an unconstitutional arrogation of power to the

Executive.  In *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024), the Supreme Court held that "it is

well established that common law claims must be heard by a jury." Moreover, "[o]nce such a suit

'is brought within the bounds of federal jurisdiction,' an Article III court must decide it with a jury if the Seventh Amendment applies." *SEC v. Jarkesy*, 144 S. Ct. at 2131 (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

Here, in the Complaint and the General Counsel's Motion for Summary Judgment in the underlying administrative matter, NLRB Case 29-CA-310869, Defendant Abruzzo seeks consequential damages of an unspecified amount against Amazon as a make-whole remedy for certain Amazon employees, the very same damages the Board attempted to argue it was not authorizing in *Thryv*. Rogers Decl. at ¶ 35, Ex. 2 at 9-10 (General Counsel requesting that the Board award "*a compensatory* make-whole remedy…and order [Amazon] to make the employees at issue here whole for the lost opportunity to engage in collective bargaining") (emphasis added); *id.* at ¶ 36, Ex. 3 at 3.  Thus, the Defendants are directly flouting the Supreme Court's recent holding in *Jarkesy* that claims for legal relief, including the types of consequential damages that Defendant Abruzzo **has expressly requested** Defendant Board Members to award in Case 29-CA-310869, must be brought before a jury.  Amazon will suffer irreparable harm if it is forced to litigate a claim for compensatory damages before Defendant Board Members and not in an Article III court, before a jury.  This Court, therefore, cannot allow Defendant Board to issue a ruling in Case 29-CA-310869 to the extent it would include an award against Amazon of compensatory damages.

> 3.  <u>NLRB Board Members' Wielding Of Executive, Judicial, And Legislative Functions Violates The Separation Of Powers Required By The Constitution</u>

It goes without saying that the judicial power belongs to Article III courts and cannot be shared with the Legislative or Executive Branches. *See Stern*, 564 U.S. at 483.  Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with

another branch than the Chief Executive…can share with the Judiciary the veto power." *Id.* (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974) (internal citations omitted)).  With respect to Amazon, the Board has taken it upon itself to act simultaneously as prosecutor, judge and jury. This violates well-established separation of powers principles and cannot be condoned.

In the instant matter, the Defendant NLRB Members who would decide NLRB Case 29-CA-310869 previously voted to authorize Section 10(j) relief in the instance referred to in Section II of this Motion. *See Drew-King v. Amazon.com Services LLC.*, E.D.N.Y., No. 22-01479. The prosecution of that Section 10(j) proceeding was timely raised by Amazon in its Objections to the JFK8 election at issue in 29-RC-288020. Rogers Decl. at ¶ 34, Ex. 1 at 3-4 (Objection 1).  Two of the NLRB Members who authorized the objectionable Section 10(j) prosecution subsequently ruled on the Request for Review of Amazon's Objections in 29-RC-288020, and all three NLRB Members who authorized the objectionable Section 10(j) prosecution are currently serving on the Board that Defendant Abruzzo asks to rule on the complaint in 29-CA-310869, causing the Board to act as both prosecutor and adjudicator of Amazon's Objections and consequent refusal to bargain in Case 29-CA-310869. *See Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case.").

The fact that Defendant Board Members are serving as both prosecutors and adjudicators in this matter is an affront to Amazon's rights under the Due Process Clause of the Fifth Amendment. In *Williams*, the Supreme Court ruled that a state judge acted in violation of the Fourteenth Amendment by reviewing a death penalty conviction where he earlier served as a prosecutor of the defendant.  The Court cautioned there that "no man can be a judge in his own case." *Williams v. Pennsylvania*, 579 U.S. at 9.  In a similar vein, the Arizona Supreme Court

recently refused to uphold the authority of a state official—the "Special Arizona Attorney General"—to both prosecute campaign finance law violations while also reviewing the decisions of the administrative judges who ruled on them. *See Horne v. Polk*, 394 P.3d 651 (Ariz. 2017). The Court noted that:

> due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication . . . [t]he agency head may supervise personnel involved in such functions … [but] if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion.

> *Id*. at 659.

The Defendant Board Members' actions here are the same.  They engaged in "strategic decisionmaking" when they voted to authorize Defendant Abruzzo's pursuit of Section 10(j) relief against Amazon in *Poor v. Amazon.com Servs. LLC*.  Yet, they are now poised to stand in judgment of Amazon's alleged unlawful refusal to bargain in Case 29-CA-310869 when the centerpiece of Amazon's legal objection to the election results in Case 29-RC-288020 is the very fact that the Board timed its pursuit of relief in the 10(j) case to unfairly impact the outcome of that election. Having participated in the prosecution decision that Amazon now challenges in its objections, the Board cannot constitutionally sit in judgment of whether that decision was taken by the Board in error.  Due process considerations require that the Defendant Board Members who authorized the *Poor* 10(j) litigation—Defendants McFerran, Wilcox and Prouty—be enjoined from participating in the Board's adjudication of Case 29-CA-310869.

Additionally, the Board has also taken it upon itself to adjudicate private rights, a power intended for the judiciary rather than the executive.  The Board's *Thryv* decision and Defendant Abruzzo's intention to use it to seek consequential damages against Amazon in Case 29-CA-310869 also constitutes a violation of separation of powers.  In *Thryv*, the Board explicitly

determined for itself that it would adjudicate private rights—a judicial function. As explained above, Section 10(c) authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).  Based on the "including" language, the Board in *Thryv* determined that consequential remedies—determined and calculated by the Board's compliance office—may be issued without a jury trial. 372 NLRB No. 22 at 9. The Board thus made an "unconstitutional delegation" of power to itself.  *Nat'l Fed. of Indep. Bus. V. OSHA*, 595 U.S. 109, 126 (2022) (Gorsuch, J., concurring). In doing so, the Board also exhibited legislative behavior when it articulated a new interpretation of Section 10(c) that creates a power that is not present in the statute.

As Justice Thomas explained in his concurrence in *Axon Enterprises, Inc.*, "[i]t may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 202 (2023) (Thomas, concurring) (quoting *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 171 (2015) (Thomas, dissenting)). That is what the Board has done here.  The Board in *Thryv* also expressly permitted "foreseeable" pecuniary harms and not just those readily calculable. As Board Members Kaplan and Ring stated in their dissent, in part:

> On its face, this standard would permit recovery for any losses indirectly caused by an unfair labor practice, regardless of how long the chain of causation may stretch from unfair labor practice to loss, whenever the loss is found to be foreseeable. In our view, this standard opens the door to awards of speculative damages that go beyond the Board's remedial authority.

*Thryv Inc.*, 372 NLRB No. 22 at 16 (Ring and Kaplan, dissenting).[1]

---

[1] Members Ring and Kaplan even acknowledged, "[w]e further observe that the Board faces potential Seventh Amendment issues if it strays into areas more akin to tort remedies. Those concerns also militate against the majority's 'direct or foreseeable' standard." *Id.* By creating this

Even if this Court agrees that the word "including" in the NLRA permits make-whole remedies beyond back pay and reinstatement, "foreseeable" damages fall outside of that bucket. Foreseeable damages are a core element of tort law. *See Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928). The Board's dictation of foreseeable damages as equitable relief under Section 10(c) is not only blatantly incorrect, but a direct abuse of its executive power. The statute authorized make-whole remedies in order to restore the aggrieved party to the status quo. The statute did not authorize the NLRB to put the aggrieved party in a *better position* than he would be had he not suffered an adverse employment action; a position created by "foreseeable" pecuniary damages. The Board has gone beyond its executive function and outright created its own rule to adjudicate in its own forum.

As set forth above, in the Complaint in the underlying administrative matter, NLRB Case 29-CA-310869, Defendant Abruzzo seeks consequential damages of an unspecified amount against Amazon as a make-whole remedy for certain Amazon employees. The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the judiciary, not the executive. By determining the amount of direct and foreseeable pecuniary and consequential damages in Amazon's administrative proceeding, Defendants, as executives, act as the judiciary. The Board's defiance of the separation of powers violates Amazon's due process rights to a fair hearing and will cause irreparable harm.

## B. Amazon Will Suffer Immediate And Irreparable Harm Without A Temporary Restraining Order And Preliminary Injunction

Amazon will suffer immediate and irreparable harm absent injunctive relief. "It is well settled that the loss of [constitutional] freedoms for even minimal periods of time constitutes

---

new remedy, the Board essentially created its own rule and its own method of determining that remedy; the Board is exercising all three powers at once.

irreparable injury justifying the grant of a preliminary injunction." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("[T]he loss of constitutional freedoms for even minimal periods of time…unquestionably constitutes irreparable injury.") (internal quotations omitted). Where a constitutional right is "either threatened or in fact being impaired at the time relief was sought," preliminary injunctive relief is appropriate. *Elrod*, 427 U.S. at 374.

The Supreme Court recognized this in *Axon.* There, the plaintiffs sought to enjoin Federal Trade Commission ("FTC") and Securities and Exchange Commission ("SEC") enforcement proceedings by challenging the constitutionality of tenure protection for the FTC's and SEC's administrative law judges. *Axon Enter.*, 598 U.S. at 179. In doing so, the Court recognized that the "harm" of "'being subjected' to 'unconstitutional agency authority'—'a proceeding by an unaccountable ALJ'" is an "abstract" harm, but nonetheless a "here-and-now injury." *Id.* at 191; *see also Energy Transfer, LP v. NLRB.*, No. 3:24-CV-198, 2024 WL 3571494, at *3-4 (S.D. Tex. July 29, 2024). This type of claim is a "here and now injury" because "it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Axon Enter.*, 598 U.S. at 179. Were the "illegitimate proceeding before an illegitimate decisionmaker" to go forward, "structural constitutional claims would come too late to be meaningful." *Id; see also Energy Transfer*, 2024 WL 3571494, at *4-5; *Space Expl*, 2024 WL 3512082, at *6. Should the underlying NLRB proceedings go forward, Amazon will lose its right not to undergo an unconstitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 175.

Amazon also stands to suffer economic harm from the unconstitutional proceedings. Because the Board has unilaterally created a rule requiring respondents to compensate aggrieved parties for "direct and foreseeable" consequential damages, Amazon has limited insight into its potential liability. The NLRB's attempt to deprive Amazon of its constitutional right to a jury trial also cannot be remedied after the proceedings occur. *Id.* at 175. Thus, Amazon faces immediate and irreparable constitutional and economic harm if the administrative proceedings move forward.

### C. The Balance Of Equities Tips In Amazon's Favor, And Both A Temporary Restraining Order And An Injunction Are In The Public's Interest

The balance of equities tips strongly in Amazon's favor. Where "the Government is the opposing party," the "harm to the opposing party and the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Amazon is likely to succeed on the merits of it claims. Without a temporary restraining order and preliminary injunction, Amazon stands to be subjected to unconstitutional administrative proceedings with Board Members who are insulated from Presidential removal before an agency violating the separation of powers. Because the General Counsel seeks consequential damages, Amazon will also be deprived of its opportunity to present a case regarding appropriate damages to a jury of its peers. On the other hand, a temporary restraining order or preliminary injunction will do the NLRB "no harm whatsoever." *BST Holdings, LLC*, 17 F.4th at 618. "Any interest [the NLRB] may claim in enforcing an unlawful (and likely unconstitutional)" proceeding is "illegitimate." *Id.*; *see also Lujan v. U.S. Dep't of Educ.*, 664 F.Supp.3d 701, 722 (W.D. Tex. 2023) ("Finally, and most importantly, the Department has no interest in enforcing a regulation that likely conflicts with Congress's unambiguous statutory mandate.").

Because of the "economic uncertainty" and constitutional violations at stake, a temporary restraining order and a preliminary injunction are also in the public interest. *BST Holdings, LLC*,

17 F.4th at 618. "The public interest is…served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions frustrate government officials." *Id.* at 618-19 (emphasis in original).  A temporary restraining order and preliminary injunction would merely require the NLRB to stay the ULP proceeding while this Court makes its determination. While Amazon may suffer economic losses and constitutional deprivation, the Defendants simply do not stand to lose anything.

## IV.     CONCLUSION

For the foregoing reasons, Amazon respectfully requests the Court to enter a temporary restraining order and preliminary injunction against the NLRB's ongoing administrative proceedings against Amazon in NLRB Case 29-RC-288020 and NLRB Case 29-CA-310869.

Dated: September 10, 2024                    Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

s/Amber M. Rogers
Amber M. Rogers
TX State Bar No. 24056224
arogers@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-979-3000

Kurt G. Larkin
*Pro hac vice forthcoming*
klarkin@huntonak.com
Riverfront Plaza, East Tower
951 East Byrd Street, Suite 700
Richmond, VA 23219
Telephone: 804-788-8200

**ATTORNEYS FOR AMAZON.COM SERVICES LLC**

## **CERTIFICATE OF CONFERENCE**

Amber M. Rogers, counsel for Amazon, conferred with Tyler J. Wiese, counsel for Defendants, about the contents of this Motion on September 6, 2024. Counsel for Defendants represented that Defendants oppose the relief Amazon requests in this Motion.

*/s/Amber M. Rogers*
Amber M. Rogers

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing document was electronically filed through the court's e-filing system, which will distribute the document to counsel for all parties, on this 10th day of September 2024.

*/s/Amber M. Rogers*
Amber M. Rogers