# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| AMAZON.COM SERVICES LLC, | Civil Action No. 5:24-cv-01000 |
| Plaintiff, | |
| vs. | DECLARATION OF AMBER ROGERS |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, and MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, | |
| Defendants. | |

## <u>DECLARATION OF AMBER ROGERS</u>

I, Amber Rogers, declare as follows:

1.      My name is Amber Rogers. I am over eighteen years of age and make the following declaration of my own free will. I have not been promised any benefit or coerced or threatened in any manner in exchange for the statements in this declaration. I have personal knowledge of the matters set forth herein, and if called upon to do so, could and would testify competently thereto.

2.      I am a Partner at Hunton Andrews Kurth LLP.

3.      I was retained by and represent Amazon.com Services LLC ("Amazon") in the underlying National Labor Relations Board ("NLRB") administrative proceedings and the instant proceeding.

1

4.      On December 22, 2021, the Amazon Labor Union ("ALU") filed a Petition seeking to represent a bargaining unit of hourly employees working at Amazon's fulfillment center in Staten Island, New York, which is called "JFK8" (Case 29-RC-288020).

5.      Pursuant to a stipulated election agreement, a manual election was conducted at JFK8 on March 25, 26, 28, 29, and 30, 2022.

6.      The election was supervised by officials from Region 29 of the NLRB.

7.      The April 1, 2022 tally of ballots recorded that, out of 8,325 eligible voters, 2,654 ballots were cast for the ALU, and 2,131 ballots were cast against the ALU.

8.      On or about April 2, 2022, the ALU requested that Amazon bargain collectively with the ALU as representative of the employees at JFK8.

9.      The NLRB is currently pursuing two related administrative proceedings against Amazon that relate to the union election conducted at JFK8: Case 29-RC-288020 and Case 29-CA-310869.

10.     On April 8, 2022, Amazon timely filed 25 Objections to the Results of the Election ("Objections") and an accompanying Offer of Proof in Case 29-RC-288020. The Objections alleged that both the Amazon Labor Union ("ALU") and NLRB Region 29 acted inappropriately in a variety of respects and interfered with the conditions necessary for holding a free and fair election under the National Labor Relations Act ("NLRA").

11.     Amazon's Objections specifically included an allegation that the Region 29 Regional Director departed from NLRB practice and written guidance when she initiated litigation in the U.S. District Court for the Eastern District of New York seeking a preliminary injunction under Section 10(j) of the National Labor Relations Act against Amazon in connection with NLRB Case 29-CA-261755 for its alleged unlawful termination of an employee—Gerald Bryson

("Bryson")—who worked at JFK8. The Region 29 Regional Director delayed initiating the case for over 18 months, waiting until the eve of the election in Case 29-CA-288020, to file suit.

12.     Bryson filed an unfair labor practice charge on or around June 17, 2020, and NLRB Region 29 issued a complaint against Amazon on December 22, 2020. The Region 29 Regional Director did not seek a Section 10(j) injunction until 23 months after Bryson was discharged, 18 months after the charge was filed, and 14 months after the complaint was issued.

13.     Through a Freedom of Information Act request, Amazon recently learned that Defendants, Chairman McFerran and Members Wilcox and Prouty—three of four sitting Board members—voted to authorize Defendant Abruzzo's prosecution of the Board's 10(j) proceeding against Amazon in this matter.

14.     In its Objections, Amazon requested that the NLRB invalidate the election results and order a second election at JFK8 free from unlawful interference.

15.     Many of Amazon's other Objections were directed against the manner in which Region 29 conducted the election. Consequently, Amazon moved to transfer its Objections to a different Region.

16.     On April 14, 2022, Defendant Abruzzo chose Region 28 and transferred the case there for further processing of Amazon's Objections.

17.     On April 29, 2022, the Region 28 Regional Director issued an Order Directing Hearing and Notice of Hearing on Objections, setting all 25 of Amazon's Objections for Hearing.

18.     The Hearing on Amazon's Objections was held before a Hearing Officer appointed by the Region 28 Regional Director. The Hearing Officer is employed by the NLRB and, at the time of the Hearing, worked in Region 28.

19.     The Hearing took place over 24 business days between June 13 and July 18, 2022.

20.     On September 1, 2022, the Hearing Officer issued her Report on Objections, in which she recommended that the Region 28 Regional Director overrule all of Amazon's Objections.

21.     On September 23, 2022, Amazon timely filed 893 Exceptions to the Hearing Officer's Report, along with a supporting brief.

22.     On January 11, 2023, the Region 28 Regional Director issued a Decision and Certification of Representative, affirming the Hearing Officer's Report on Objections in all relevant respects. He also certified the ALU as bargaining representative of the Company's hourly employees at JFK8.

23.     On February 9, 2023, Amazon filed a Request for Review with the NLRB challenging the Region 28 Regional Director's Decision and Certification of Representative.

24.     The NLRB issued a decision denying Amazon's Request for Review in Case 29-RC-288020 on August 29, 2024.

25.     Because Amazon is alleging that the ALU's and NLRB Region 29's objectionable conduct interfered with the election at JFK8, Amazon denies that the ALU should have been certified by the Region 28 Regional Director as the exclusive collective-bargaining representative of any employee at the JFK8 Facility.

26.     While the processing of Case 29-RC-288020 was ongoing, the ALU demanded that Amazon recognize and bargain with it, notwithstanding the Company's Objections.

27.     Following its April 2, 2022 demand for bargaining, the ALU filed an unfair labor practice charge with Region 29 of the NLRB alleging that Amazon unlawfully refused to recognize or bargain with the Union as exclusive bargaining representative of the hourly employees at JFK8.

28.     On July 12, 2023, the Regional Director of Region 29 of the NLRB issued a Complaint in Case 29-CA-310869, alleging that Amazon unlawfully refused to bargain collectively with the ALU as the exclusive collective-bargaining representative of hourly employees at the JFK8 Facility.

29.     On August 23, 2023, Defendant Abruzzo filed a Motion to Transfer Case 29-CA-310869 to the NLRB and for Summary Judgment. In the Motion for Summary Judgment, Defendant Abruzzo alleges that the ALU was validly declared the winner of the JFK8 election and that, by electing to pursue its Objections in Case 29-RC-288020 and choosing not to bargain with the ALU until those challenges are adjudicated, Amazon has violated the NLRA. Defendant Abruzzo seeks an Order from the NLRB granting her Motion for Summary Judgment, finding that Amazon has violated Section 8(a)(5) of the NLRA, and directing Amazon to recognize and bargain with the ALU as exclusive representative of the hourly employees at JFK8. Defendant Abruzzo also seeks consequential damages of an unspecified amount against Amazon as a make-whole remedy for certain Amazon employees.

30.     On August 23, 2023, the NLRB issued an order transferring Case 29-CA-310869 to itself, and issued to Amazon a Notice to Show Cause why the General Counsel's motion should not be granted.

31.     On September 14, 2023, Amazon filed an Opposition to the General Counsel's Motion for Summary Judgment, Response to the Board's Notice to Show Cause, and Cross Motion for Summary Judgment. Amazon argued, among other things, that the NLRB could not resolve certain issues relevant to Amazon's and the General Counsel's respective motions unless and until the NLRB ruled on Amazon's Request for Review in Case 29-RC-288020.

32.     Now that the NLRB has denied Amazon's Request for Review in Case 29-RC-288020, Amazon anticipates that the NLRB will issue an order in Case 29-CA-310869 granting the General Counsel's Motion for Summary Judgment in the imminent future.

33.     The NLRB issued another Notice to Show Cause in Case 29-CA-310869 on August 30, 2024, the day after the Board issued its decision in Case 29-RC-288020. The Board's August 30, 2024 Notice to Show Cause permits Amazon and/or the General Counsel to file new or supplemental responses to the Notice to Show Cause the NLRB issued on August 24, 2023 arguing why Defendant Abruzzo's Motion for Summary Judgment should not be granted. It provides that Amazon must file any supplemental opposition to the original Notice to Show Cause on or before Friday, September 13, 2024.

34.     Attached hereto as **Exhibit 1** is a true and correct copy of Amazon's Objections to the Results of the Election in Case 29-RC-288020.

35.     Attached hereto as **Exhibit 2** is a true and correct copy of the General Counsel's Motion to Transfer Case to the Board and Motion for Summary Judgment in Case 29-CA-310869.

36.     Attached hereto as **Exhibit 3** is a true and correct copy of the General Counsel's Complaint issued in Case 29-CA-310869.

37.     Attached hereto as **Exhibit 4** is a true and correct copy of the memorandum sent from the NLRB to Defendant Abruzzo on March 10, 2022 authorizing her to institute Section 10(j) proceedings in the administrative case related to Bryson's termination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of September, 2024.

_Amber M. Rogers_
Amber Rogers

# EXHIBIT 1

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

| | | |
|---|---|---|
| AMAZON.COM SERVICES LLC, | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| and | ) | Case No. 29-RC-288020 |
| | ) | |
| AMAZON LABOR UNION, | ) | |
| | ) | |
| Petitioner. | ) | |

<u>**AMAZON.COM SERVICES LLC'S OBJECTIONS**</u>
<u>**TO THE RESULTS OF THE ELECTION**</u>

Of the 8,325 Amazon employees eligible to vote in this election, only 2,654—less than 32% of the eligible JFK8 workforce—voted for the Amazon Labor Union ("ALU" or "Union"). The Union began and ended this campaign with far less than majority support. Region 29 of the National Labor Relations Board ("Region 29") has known this from the beginning but has acted throughout this proceeding in a manner that unfairly and inappropriately facilitated the ALU's victory. Region 29's interference and mismanagement of the election process, coupled with the ALU's own objectionable, coercive, and misleading behavior throughout the campaign, destroyed the laboratory conditions necessary for a free and fair election.

Most glaringly, the Region abandoned the appearance of neutrality when it publicly initiated a 10(j) injunction lawsuit against Amazon in federal court seeking the reinstatement of former employee Gerald Bryson a mere week before the election—but ***more than twenty-three months*** after Bryson's discharge and ***more than fourteen months*** after Region 29 initiated litigation in the underlying case in December 2020. Region 29's filings and public commentary—which questioned the possibility of a fair election absent the immediate reinstatement of an employee terminated years ago for a sexist verbal assault against a female co-worker—painted

Amazon in a misleading and negative light to voters and suggested the Board's preference for the ALU.

The Region's mishandling of this proceeding began months ago when it accepted the ALU's petition without the support required by the NLRB's decades-old rules and standards. After it failed to generate enough support for its original petition, the ALU publicly complained that it was "impossible" to obtain the required 30% showing of interest and called on the Region to help the ALU. The Region acquiesced, arbitrarily removing over 1,500 employees from the list of employees in the petitioned-for unit. It then used that artificially reduced number to calculate whether the ALU's submission met the 30% showing of interest threshold. The Region's willingness to bend its rules lent a false air of legitimacy to the Union and constituted obvious and improper assistance to the ALU.

After fostering this impression throughout the critical period, during the election itself the Region demonstrated the appearance of support for the ALU in front of voters in the polling place while they were voting. The Region required employees wearing "Vote No" shirts to cover up their shirts before entering the polling place, but permitted employees wearing ALU paraphernalia to display it in the polling place. The Region also hindered voter turnout by mismanaging the beginning stages of the election and bringing insufficient resources to support the size of the election. The Region's unpreparedness produced chaos and hours-long lines to vote on the first polling day, discouraging other employees from voting. The Region also allowed camera crews, including the ALU President's personal videographer, to photograph, video, and interview employees standing in line to vote. This scared away those who understandably did not desire to have a microphone or news camera in their face or a reporter publicly interrogating them about how they planned to vote.

The ALU's own misconduct during the critical period likewise chilled voters, suppressed turnout, and destroyed laboratory conditions. Among other things, the ALU unlawfully intimidated employees to support the ALU, stating among other things "if you vote no, I will know"; threatened violence against its detractors; perpetuated lies about Amazon's conduct in the NYPD's arrest of ALU President Christian Smalls for trespassing; recorded voters in the polling place; engaged in electioneering in the polling area; distributed marijuana to employees in exchange for their support; and surveilled employees as they exited the voting tent. All of these actions had a tendency to suppress voter turnout and interfere with laboratory conditions.

The actions of both the Region and the ALU are substantially more egregious than the installation of a mailbox by the United States Postal Service that the Board concluded destroyed and interfered with laboratory conditions in Amazon's landslide election victory in Case 10-CA-269250. The Region and ALU's improper actions here warrant at least the same result.

"The Board in conducting representation elections must maintain and protect the integrity and neutrality of *its procedures*." *Ensign Sonoma LLC*, 342 NLRB 933, 933 (2004) (emphasis in original) (quoting *Athbro Precision Eng'g Corp.*, 166 NLRB 966, 966 (1967)). Because that patently did not happen here, the Board must order a rerun election.

## **OBJECTIONS**

**OBJECTION 1 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it sought a 10(j) injunction in *Drew-King v. Amazon.com Services LLC*, E.D.N.Y., No. 22-01479, on March 17, 2022. The Region sought this injunction 23 months after the alleged discriminatee (Gerald Bryson) was discharged, 18 months after the charge was filed, and 14 months after the complaint was issued in Case 29-CA-261755. Delaying the filing of this lawsuit until the eve of the election improperly

3

influenced employees' perception of Amazon mere days before they were to vote. The Regional Director admitted as much in a statement to multiple press outlets, specifically referencing the imminent election in Case 29-RC-288020, stating the Board's support for the ALU and alleging Amazon was a lawbreaker. Specifically, the Regional Director said:

> We are seeking an injunction in District Court to immediately reinstate a worker that Amazon *illegally* fired for exercising his Section 7 rights. We are also asking the Court to order a mandatory meeting at JFK8 with all employees at which Amazon will read a notice of employees' rights under the National Labor Relations Act. *No matter how large the employer*, it is important for workers to know their rights—*particularly during a union election*—and that the NLRB will vociferously defend them.

(emphasis added).[1] Mr. Bryson was discharged in May of 2020 for verbally berating a female co-worker. This video[2] of the incident, which the Region attempted to conceal from Amazon throughout the investigation and trial, revealed that Mr. Bryson called his female co-worker, amongst other names, "gutter bitch," "crack ho," "queen of the slums," and "crack-head" over a bullhorn in front of their workplace because she exercised her Section 7 rights to disagree with him. Yet, on the eve of the election, the Region pursued this injunction suggesting that only ALU supporters' Section 7 rights matter, and that Amazon's actions were worthy of an extraordinary remedy.

**OBJECTION 2 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it delayed investigating numerous unmeritorious and frivolous unfair labor practice charges that were pending during the critical period rather than properly dismissing them or soliciting withdrawals.

---

[1] *See* Mitchell Clark, The NLRB is suing Amazon to get a fired activist his job back, THE VERGE (Mar. 17, 2022), https://www.theverge.com/2022/3/17/22983692/nlrb-amazon-labor-activism-gerald-bryson-jfk8-warehouse-injunction; *see also* Karen Weise, N.L.R.B sues Amazon over labor practices at a Staten Island Facility, NY TIMES (Mar. 17, 2022), https://www.nytimes.com/2022/03/17/business/amazon-staten-island-facility.html.

[2] *See* https://www.facebook.com/bella.nagengast/videos/1079803845739201.

The Region's inaction enabled the ALU to perpetuate its false campaign narrative[3] that Amazon was a recidivist violator of the National Labor Relations Act ("Act"), when in fact there has not been a single NLRB order finding that Amazon has violated the Act. The ALU exploited the Region's inaction by continuing to file numerous baseless unfair labor practice charges throughout the critical period. Many of these charges challenge conduct that is lawful under extant Board precedent (*e.g.*, charges about Weingarten rights and captive audience meetings). Some were later withdrawn by the ALU while others were withdrawn and then refiled to create the appearance of a greater volume of charges.

**OBJECTION 3 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it allowed the ALU's petition in Case 29-RC-288020 to proceed to election knowing that the Union did not have the required 30% showing of interest in the petitioned-for unit. It did so after public threats by the ALU to expose "concerning issues" about the Region, including public comments from ALU officials that urged the Board to "work with" and help the ALU through the process, and to relax its rules. The Board's validation of the ALU's insufficient petition in response to and after these public threats and comments reasonably suggested to employees that the ALU had more support in the petitioned-for unit than it did and/or that the Region favored the ALU in its case processing.

**OBJECTION 4 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it impermissibly allowed the ALU for more than a month (from December 22, 2021 to January 25, 2022) to continue gathering and submitting late signatures to bolster its insufficient showing of interest. This is contrary to Board procedure for verifying a petitioner's showing of interest. *See* NLRB,

---

[3] The ALU has repeatedly, and falsely, claimed that it has filed "over 40" unfair labor practice charges against Amazon.

CASEHANDLING MANUAL-PART TWO, REPRESENTATION PROCEEDINGS § 1103.1(a) (Sept. 2020) (CASEHANDLING MANUAL) (requiring a petitioner to file evidence in support of the showing of interest at the time the petition is filed or, when the petition is e-filed or faxed, within two days of filing).

**OBJECTION 5 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it unilaterally altered the scope and size of the petitioned-for unit for the purpose of investigating the ALU's showing of interest. These unilateral modifications to the scope of the petitioned-for unit, which neither party endorsed, were used by the Region solely to support its flawed conclusion that the ALU purportedly met the minimum requirement of a 30% showing of interest. The petition and Stipulated Election Agreement reflect identical unit descriptions. However, in completing the public record NLRB FORM-4069, Region 29 altered the description, changing it from "All hourly full-time and regular-part time fulfillment center employees employed at the JFK8 Building located at 546 Gulf Avenue, Staten Island, NY 10314," as requested by the ALU, to "FC Employee I, working at JFK8 building," thereby reducing the size of the unit and excluding other petitioned-for classifications of employees. Region 29 also concluded that only 6,038 employees worked in that unit, while Amazon provided the Region with extensive payroll documentation and additional evidence that the petitioned-for unit was comprised of approximately 7,500 employees at the time of the filing of the petition. Soon after recording these manipulated and inaccurate facts, and approving the further processing of the petition, Region 29 reverted to the broader unit definition included in the ALU's petition and did not question Amazon's submission of a voter list containing 8,325 employees. The Region's manipulated and inaccurate conclusion regarding the contested

showing of interest perpetuated the false impression that the ALU had sufficient support to proceed forward with an election when it clearly did not have sufficient support.

**OBJECTION 6 -** The Region failed to protect the integrity of its procedures when it deviated from the Casehandling Manual on Representation Proceedings by failing to staff the election adequately. Among other things, the Region provided an insufficient number of Board Agents for check-in and failed to provide adequate equipment for the election, supplying only three voting booths for an election with more than 8,000 potential voters. CASEHANDLING MANUAL § 11316. The Region was well aware of the size of the petitioned-for unit and potential number of voters. *See* Voter List, filed on February 22, 2022 (including 8,325 employees in the petitioned-for unit). These inactions caused extraordinarily long lines during the first voting session, widely publicized in the news media, and discouraged many employees from voting in subsequent polling sessions, particularly as the temperatures dropped to 20 degrees during two nights of polling. The Board's actions had a reasonable tendency to disenfranchise voters (as evidenced by extremely low voter turnout), and contributed to the Board's ineffective policing of the polling area, as further described in objections below.

**OBJECTION 7 -** The Region failed to protect the integrity of its procedures when it turned away voters when they attempted to vote during open polling sessions, and told voters they were only being allowed to vote in alphabetical order. The parties' Stipulated Election Agreement provided that "the Board Agent will allow any voter who is in line during the polling period to vote." These actions disenfranchised those voters who were turned away, but also other voters who learned that voters were turned away from the polls and chose not to participate in the election.

**OBJECTION 8 -** The Region failed to protect the integrity of its procedures when it failed to control media presence in and around the voting area. Amazon specifically raised concerns to

the Region about media interference in the voting process prior to the start of the election. Yet during the first polling session, numerous media members—including a documentary film crew retained by Mr. Smalls—entered Amazon's private property, filmed and recorded employees who were in line to vote, and even asked voters how they planned to vote, within feet of Board Agents. Photographs and quotes of these employees were then publicly broadcast across the nation. All of this media filming, recording, and broadcasting took place within the same zone around the polling place where the Region required Amazon to disable its security cameras during voting. The Board's failure to stop the media from surveilling and interrogating voters standing in line to vote had a reasonable tendency to discourage other employees from voting in subsequent polling sessions (as evidenced by extremely low voter turnout).

**OBJECTION 9 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it allowed non-employee ALU President Smalls to loiter around the polling location and within the "no-electioneering zone" established by the Region on multiple occasions during polling times, where he was able to observe who participated in the election. Mr. Smalls' presence in and around the "no-electioneering zone" during polling times reasonably tended to intimidate, coerce, and create the impression of surveillance among voters and prospective voters.

**OBJECTION 10 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it directed voters to cover up "Vote NO" shirts, but allowed other voters to wear ALU shirts and other ALU paraphernalia in the polling area. There was no basis for this direction as the Board has consistently held that wearing stickers, buttons, and similar campaign insignia by participants and observers at an election is, without more, not prejudicial. *R. H. Osbrink Mfg. Co.*, 114 NLRB 940, 941-43

(1955); *see also Furniture City Upholstery Co*., 115 NLRB 1433, 1434–1435 (1956). The Board has held that the impact on voters is not materially different "whether the observers wear prounion or antiunion insignia of this kind." *Larkwood Farms*, 178 NLRB 226, 226 (1969) (observer wearing "Vote No" hat not objectionable). The Region's discriminatory directions toward ALU opponents created the impression for all voters present, as well as all potential voters who learned of these incidents, that the Board appeared to favor the ALU over Amazon in the outcome of the election. "No participant in a Board election should be permitted to suggest to the voters that this Government agency, or any of its officials, endorses a particular choice." *Am-O-Krome Co.*, 92 NLRB 893, 894 (1950).

**OBJECTION 11 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it repeatedly allowed an ALU observer to audio/video record the check-in tables and voting area on his mobile phone while serving as an observer during multiple voting sessions. CASEHANDLING MANUAL §§ 11318.2(b) and 11326.2. The Region permitted this individual to continue serving as an ALU election observer following his conspicuous recording of the voting area while the polls were open. These actions further constitute objectionable list keeping of voters, objectionable surveillance of voters, and also created the impression for voters and potential voters that the ALU was surveilling them.

**OBJECTION 12 -** The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the ALU when it solicited unfair labor practice charges against Amazon in the presence of voters in the polling area while the polls were open. During the election, an employee entered the polling area and complained about Amazon's actions during the campaign. Rather than tell the employee that they could discuss

the matter privately, the Board Agent, within earshot of voters, stated to the employee that the employee could file unfair labor practice charges against Amazon with the NLRB.

**OBJECTION 13 -** During the critical period and while the polls were open, the ALU's members and agents harassed and threatened physical violence and other reprisals against employees who were not supportive of the ALU's cause. "Threats by union agents warrant the setting aside of an election where they 'reasonably tend[] to interfere with the employees' free and uncoerced choice in the election.'" *Robert Orr-Sysco Food Servs. LLC*, 338 NLRB 614, 615 (2002) (quoting *Baja's Place*, 268 NLRB 868 (1984)).

**OBJECTION 14 -** The ALU improperly promised employees in the final days of the campaign that it would not charge them dues unless and until the ALU secured a raise for employees during collective bargaining. Prior to and during the critical period, the ALU was clear that it would charge employees dues immediately following a successful vote. After employees expressed reluctance to pay dues, the ALU directly contradicted its earlier statements and asserted for the first time, late in the campaign, that it would not charge dues unless and until it secured higher wages in contract negotiations with Amazon. The ALU made these promises to employees during employee meetings, on social media, and in a letter from the ALU's President to all eligible voters two days before the polls opened. The ALU's failure to file any foundational documents and LM filings with the Department of Labor, as required by the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), coupled with its late-hour promise of free union representation, allowed it to make promises regarding its dues structure in a way that deprived Amazon of the ability to effectively respond, and denied employees the opportunity to assess the credibility of the promise. Additionally, the ALU's promises of free union representation is an objectionable grant of a benefit because this benefit is within the ALU's power to effectuate. *See,*

*e.g., Alyeska Pipeline Serv. Co.*, 261 NLRB 125, 126-27 (1982) (union controlled all access to construction jobs in Alaska for employees participating in election, and thus union's suggesting only way to get union card was by voting for union in upcoming election was objectionable as union was clearly promising to grant members advantage over nonmembers and had power to do that); *see also Go Ahead N. Am., LLC*, 357 NLRB 77, 78 (2011) (finding objectionable union's offer to waive back dues).

**OBJECTION 15 -** The ALU engaged in repeated and deliberate attempts to interfere with and "shut down" Amazon's small group meetings, solicited employees during Amazon's educational meetings in violation of Amazon's policies, and destroyed Amazon's campaign materials. The ALU's actions intentionally created hostile confrontations in front of eligible voters and hindered Amazon's lawful right to communicate its views to employees during the campaign. *See, e.g.*, *Livingston Shirt Corp.*, 107 NLRB 400, 406-07, 409 (1953) (union has no right to campaign or solicit during employer's lawful small group meetings); *United Steelworkers of Am. v. NLRB*, 646 F.2d 616, 627 (D.C. Cir. 1981) (same, unless an employer has a broad rule prohibiting solicitation during nonworking time [Amazon has no such policy]).

**OBJECTION 16 -** Non-employee ALU organizers repeatedly trespassed on Amazon's property. Over the course of many months, Amazon informed non-employee ALU organizers on several occasions that they had no right to solicit on Amazon's property and that their presence on Amazon's property constituted unlawful trespass. Nevertheless, Mr. Smalls and other non-employee ALU organizers continued to trespass on Amazon's property for the purpose of soliciting employee support during the critical period. On February 23, 2022, during the critical period, Mr. Smalls and two ALU organizers initiated a confrontation with the New York Police Department after Mr. Smalls repeatedly refused to leave Amazon's property, which resulted in

their arrests. After his arrest, Mr. Smalls and the ALU consistently misrepresented what had occurred, claiming that he merely dropping off food for employees and was akin to an Uber Eats driver, and that Amazon "called the cops on employees." Mr. Smalls consistently failed, however, to mention in his social media posts and interviews on the subject that on the date of his arrest, he brought a film crew[4] onto Amazon's property without authorization, conducted an interview (that can be seen on social media), and then proceeded to trespass and loiter for over one hour. The ALU also filed ULP charges—which the Region has yet to investigate—and falsely alleged that Amazon had "violated its national settlement" with the NLRB. The ALU then amplified these misrepresentations and the pendency of the charge in the media. All of these actions had a reasonable tendency to interfere with laboratory conditions. *See Phillips Chrysler Plymouth*, 304 NLRB 16, 16 (1991) (Board set aside election when union agents invaded the employer's premises without permission and refused to leave when asked, engaging in a confrontation with company management).

**OBJECTION 17 -** The ALU unlawfully polled employee support, engaged in unlawful interrogation, and created the impression of surveillance during the critical period. During the critical period, the ALU distributed a pledge form that asked employees to fill out their name, state what day they planned to vote, what time they planned to vote, their phone number, their address, and to sign a commitment that they would vote "Yes." This constitutes objectionable polling and interrogation. The ALU's request that employees identify what time and date they would vote reasonably gave the impression that the ALU would surveil when and if they chose to vote, and the commitment to vote "Yes" gave the impression that they could not change their mind if they signed one of these commitment forms. *See, e.g., Kusan Mfg. Co. v. NLRB*, 749 F.2d 362, 365

---

[4] *See* Addison Post, *Amazon Did Everything it Could to Bust Staten Island Union*, THE INTERCEPT (Apr. 2, 2022), https://theintercept.com/2022/04/02/amazon-union-staten-island/.

(1984) (citing *NLRB v. Claxton Mfg. Co.*, 613 F.2d 1364 (5th Cir.1980)) (recognizing that an employer may successfully challenge a representation election by showing that pre-election polling by the union was coercive).

**OBJECTION 18 -** After disparaging—and celebrating its independence from—established, institutional unions for months leading up to the vote, the ALU's President and attorney asserted in 11th hour communications to voters that the ALU was backed by established unions with millions of union members, that those more-established unions were actively involved in the ALU's campaign, were providing funding and other services to the ALU, and would also be involved in contract negotiations if the ALU was elected. The ALU's failure to file any foundational documents and LM filings with the Department of Labor as required by the LMRDA, coupled with its late-hour promise of operational support from and affiliation with other unions, deprived Amazon of the ability to effectively respond and employees the opportunity to assess the ALU's credibility. These misrepresentations are objectionable conduct because, under the circumstances, employees were unable to discern the truth of these statements regarding which labor organization would be representing them.

**OBJECTION 19 -** ALU supporters misled employees by telling them that they would lose their benefits if they did not support the ALU. Relying on language barriers and misrepresentations of the election processes, during the critical period, ALU organizers specifically targeted Amazon employees who recently immigrated from Africa and threatened that their continued benefits were contingent on their support of the ALU. While the ALU's conduct in this regard is a deplorable scare tactic targeted at an immigrant population, these false threats also constitute objectionable

conduct because they reasonably tended to coerce employees into supporting the ALU solely out of fear that they would lose their benefits.

**OBJECTION 20 -** The ALU deployed a light projector outside the JFK8 facility that projected mass messaging on the façade of the JFK8 building immediately prior to the election. Late at night on March 23, 2022, and through the early morning hours, after the voting tent was in place, the ALU projected messaging on the front of JFK8 immediately over the polling area which read: "Amazon Labor Union"; "VOTE YES"; "VOTE YES! TO KEEP YOUR PHONES"; "BE THE FIRST IN HISTORY"; "THEY FIRED SOMEONE YOU KNOW"; "THEY ARRESTED YOUR COWORKERS"; and "ALU FOR THE WIN". *See, e.g.*, Rachel Gumpert (@rlgumpert), TWITTER (Mar. 27, 2022), https://twitter.com/rlgumpert/status/1508089747289219082 (last visited Apr. 8, 2022). The ALU's light projections are also objectionable misrepresentations inasmuch as they caused confusion about the identity of the messenger, suggested that Amazon supported the messaging, and misrepresented the purpose and consequences of the vote. The ALU's light projections also reiterated the ALU's false campaign narrative that Amazon sought the arrest of employees. "[E]mployers and unions alike will be prohibited from making election speeches on company time to massed assemblies of employees within 24 hours before the scheduled time for conducting an election." *Peerless Plywood Co.*, 107 NLRB 427, 429 (1953). Because "the Board's goal is to keep voters as free of uninvited mass messages as possible during the period just prior to the conduct of the election," the ALU's mass projection of its campaign messaging falls squarely within the prohibitions of *Peerless Plywood. See Bro-Tech Corp.*, 330

NLRB 37, 39 (1999) (holding union's use of sound truck broadcasting pro-union music constituted objectionable conduct).

**OBJECTION 21 -** The ALU failed to file forms required by the LMRDA. The LMRDA requires all unions purporting to represent private sector employees to file, among other things, detailed financial reports. 29 U.S.C.A. §§ 431-432. As acknowledged by the LMRDA, these disclosures are necessary to eliminate or prevent improper practices on the part of labor organization, their officers, and their representatives and to protect employees from the activities of labor organizations. *Id*. § 401(b)-(c). To date, the ALU has not filed any financial or other reports required by the LMRDA despite being under a legal obligation to do so. The ALU's failure to comply with the LMRDA deprived employees from access to critical financial information about the ALU's operations during a critical time period (*i.e.*, whether to vote for them as their bargaining representative). ALU President Smalls brazenly told CNN the week before the election that he would not file these disclosures until after the election, if at all.[5]

**OBJECTION 22 -** The ALU distributed marijuana to employees in return for their support in the election. Amazon made the Region aware of such conduct several times. The Board, as a federal agency and regulator, cannot condone such a practice as a legitimate method of obtaining support for a labor organization. *See e.g., Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1165 (9th Cir. 2020) (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("We will not presume that Congress would enact a statute that requires a federal agency to violate federal law.")); *see also Epic Sys. Corp.*, 138 S. Ct. at 1624 (courts should strive to give effect to both laws when two are in conflict). The ALU's distribution of marijuana was an impermissible

---

[5] *See* Sara Ashley O'Brien, Two Amazon warehouses are vying to make history with company's first union, but they're very different, CNN BUSINESS, (Mar. 30, 2022), https://www.cnn.com/2022/03/25/tech/amazon-new-york-alabama-union-elections/index.html.

grant of benefit and interfered with employees' free choice in the election. *See Go Ahead N. Am., LLC*, 357 NLRB at 77-78 (setting aside election where union granted benefits with a value in excess of "minimal").

**OBJECTION 23 -** On March 25, 2022, Mr. Smalls posted to his social media accounts a video of himself standing outside the voting area over 20 minutes after voting began and after he had told certain employees that the ALU would know how they voted. Employees viewing a video of the ALU's President appearing to stand outside the polling area while the polls were open reasonably tended to coerce and intimidate voters and potential voters and lead them to believe that the ALU and Mr. Smalls was or would surveil them. Mr. Smalls' social media post also reasonably tended to create the impression with voters that the Board supported ALU in the election, as it failed to properly police and/or took no actions to remove him from the "no-electioneering zone" established by the Board.

**OBJECTION 24 -** The ALU engaged a camera/documentary crew that maintained a consistent presence in the polling place. Despite being directed to leave the area by Amazon in front of the Board Agent and ALU President Smalls, the crew returned several times and filmed employees in line waiting to vote, and employees entering and exiting the voting tent. These actions reasonably tended to coerce and intimidate voters and potential voters and lead them to believe that Mr. Smalls and the ALU would know if or how they voted, and created the impression of surveillance.

**OBJECTION 25 -** ALU officials, agents, and supporters, including but not limited to non-employee ALU President Smalls and non-employee Gerald Bryson, engaged in objectionable conduct, including loitering in the "no-electioneering zone" established by the Board and/or within view of the polling area while polls were open, creating the impression among employees that the

ALU was surveilling the polling area, and otherwise engaging in electioneering. This conduct reasonably tended to coerce and intimidate voters and potential voters.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Kurt Larkin*
Kurt Larkin
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(T): 804-788-8200
(F): 804-788-8218
(E): klarkin@HuntonAK.com

Amber Rogers
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(T): 214-979-3000
(F): 214-880-0011
(E): arogers@HuntonAK.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was electronically filed with the NLRB and was served by electronic mail this 8th day of April, 2022 to:

Kathy Drew King, Regional Director
Region 29, National Labor Relations
Board
100 Myrtle Ave, Suite 5100
Brooklyn, NY 11201-4201
Tel No. – (718) 330-7713
Fax No. – (718) 330-7579
E-mail – KathyDrew.King@nlrb.gov
E-mail – kate.anderson@nlrb.gov
E-mail – ioulia.fedorova@nlrb.gov

Eric Milner
Simon & Milner
99 W. Hawthorne Ave. Suite 308
Valley Stream, NY 11580
Tel No. – (516) 561-6622
Fax No. – (516) 561-6828
E-mail - emilner@simonandmilner.com

*/s/ Amber M. Rogers*
Amber M. Rogers

# Confirmation

 Print

You have E-Filed your document(s) successfully. You will receive an E-Mail acknowledgement noting the official date and time we received your submission. Please save the E-Mail for future reference. You may wish to print this page for your records

**Note:**This confirms only that the document was filed. It does not constitute acceptance by the NLRB

**My Account Portal:** Now that you have logged in you may also navigate directly to <u>My Account Portal</u>.

**Please be sure to make a note of this confirmation number.**

**Confirmation Number:** 1060944815
**Date Submitted:** Friday, April 8, 2022 4:31 PM Eastern Standard Time
**Submitted E-File To Office:** Region 29, Brooklyn, New York

**Case Number:** 29-RC-288020
**Case Name:** Amazon.com Services LLC
**Filing Party:** Employer

**Contact Information:**
**Amber Rogers**
HUNTON ANDREWS KURTH LLP, 1445 Ross Avenue, Suite 3700, Dallas, TX 75202
Ph: (214) 468-3308
E-mail: arogers@hunton.com

**Attached Documents:**
Objections to an Election:29-RC-288020 Amazon_s Objections.pdf

Start Another E-Filing

# EXHIBIT 2

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES LLC**

    **and**                                                **Case No. 29-CA-310869**

**AMAZON LABOR UNION**

**GENERAL COUNSEL'S MOTION TO TRANSFER CASE TO THE BOARD**
**AND MOTION FOR SUMMARY JUDGMENT**

Pursuant to Sections 102.24 and 102.50 of the Rules and Regulations of the National Labor Relations Board, Counsel for the General Counsel moves to transfer this case to the Board and moves for summary judgment against Amazon.com Services LLC (Respondent) on the grounds that there are no genuine issues of material fact framed by the pleadings and that General Counsel is entitled to judgment as a matter of law. In that regard, Respondent has refused to bargain with Amazon Labor Union (the Union) in order to test the Board's certification of the Union as the exclusive collective-bargaining representative of all hourly full-time and regular-part time fulfillment center associates employed by Respondent at its JFK8 building located at 546 Gulf Avenue, Staten Island, New York.

In support of this Motion, Counsel for the General Counsel states the following:

1.      On December 22, 2021, the Union filed a Petition pursuant to Section 9(c) of the Act in Case No. 29-RC-288020, seeking to represent all hourly full-time and regular-part time fulfillment center associates employed by Respondent at its JFK8 building located at 546 Gulf Avenue, Staten Island, New York. A copy of the Petition is attached as Exhibit 1.

2.       On February 17, 2022, the Regional Director for Region 29 approved a Stipulated Election Agreement in which the parties agreed that the following employees of Respondent constitute a unit appropriate for the purposes of collective bargaining (the Unit):

> **INCLUDED**: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's JFK8 building located at 546 Gulf Avenue, Staten Island, New York.

> **EXCLUDED**: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

A copy of the Stipulated Election Agreement is attached as Exhibit 2.

3.       Pursuant to the Stipulated Election Agreement, Region 29 conducted an election for the Unit on various dates in March 2022, and, on April 1, 2022, issued a Tally of Ballots showing that a majority of the valid votes were cast for the Union. A copy of the Tally of Ballots is attached as Exhibit 3.

4.       On April 8, 2022, Respondent filed Objections to the Results of the Election. A copy of the Objections is attached as Exhibit 4.

5.       On April 14, 2022, the General Counsel issued an Order Transferring Case from Region 29 to Region 28.  A copy of the Order is attached as Exhibit 5.

6.       On April 29, 2022, the Regional Director for Region 28 issued an Order Directing Hearing and Notice of Hearing on Objections. A copy of the Order and Notice of Hearing is attached as Exhibit 6.

7.       On September 2, 2022, based on a hearing conducted between June 13, 2022, and July 18, 2022, the Hearing Officer issued the Hearing Officer's Report on Objections concluding

that Respondent's objections should be overruled in their entirety. A copy of the Hearing Officer's Report is attached as Exhibit 7.

8.  On September 23, 2022, Respondent filed Exceptions to the Hearing Officer's Report on Objections. A copy of the Exceptions is attached as Exhibit 8.

9.  On January 11, 2023, the Regional Director for Region 28 issued his Decision and Certification of Representative. In the Decision and Certification of Representative, the Regional Director concluded that the Hearing Officer's rulings were free from prejudicial error and should be affirmed. Further, the Regional Director overruled Respondent's objections and issued a Certification of Representative certifying the Union as the exclusive collective-bargaining representative of the Unit. A copy of the Regional Director's Decision and Certification of Representative is attached as Exhibit 9.

10.  On February 9, 2023, Respondent filed with the Board a Request for Review of the Regional Director's Decision and Certification of Representative. The Request for Review is currently before the Board. A copy of the Request for Review is attached as Exhibit 10.

11.  On or about April 2, 2022, and on multiple subsequent occasions, the Union, by letter to Respondent, demanded that Respondent bargain collectively with the Union as the exclusive collective-bargaining representative of the Unit. A copy of the Union's April 2, 2022, Demand to Bargain is attached as Exhibit 11.

12.  On January 25, 2023, the Union filed an unfair labor practice charge in Case No. 29-CA-310869, and a copy was served on Respondent by U.S. mail that same day. A copy of the Charge, including the affidavit of service, is attached as Exhibit 12.

13.     By email dated January 25, 2023, Respondent confirmed to Region 29 that it was testing the Board's certification of the Union as the exclusive collective-bargaining representative of the Unit. A copy of Respondent's email is attached as Exhibit 13.

14.     On July 12, 2023, the Regional Director for Region 29 issued and served a Complaint in Case No. 29-CA-310869 alleging that, since on or about April 2, 2022, Respondent has failed and refused to bargain collectively with the Union as the exclusive collective-bargaining representative of the Unit.  A copy of the Complaint, including the affidavit of service, is attached as Exhibit 14.

15.     On July 26, 2023, Respondent filed its Answer to Complaint, admitting in part, denying in part, and failing to admit or deny certain allegations in the Complaint. A copy of the Answer is attached as Exhibit 15.

16.     In its Answer, Respondent admits, without qualifications, Complaint Paragraphs 2 and 4, alleging the nature of Respondent's operations and that Respondent is an Employer within the meaning of the Act.

17.     In its Answer, Respondent admits that the Union filed the charge referenced in Complaint Paragraph 1 and claims that it "is without sufficient information to admit or deny the date of service of the charge."   Because Respondent "does not contest" that it received the charge and does not deny the timely service of the charge, and as service of the charge is established by Region 29's affidavit of service in Exhibit 12, it is clear that there is no genuine issue of material fact. The allegation in Complaint Paragraph 1 should be admitted as true.

18.     In its Answer, Respondent denies the factual jurisdictional assertions in Complaint Paragraph 3, while also stating that it "does not dispute the Board's jurisdiction over this matter." Respondent has previously stipulated to the underlying factual basis for the Board's jurisdiction in

the Stipulated Elected Election Agreement in Case No. 29-RC-288020 (Exhibit 2). It is clear that there is no genuine issue of material facts and the allegation in Complaint Paragraph 3 should be admitted as true.

19.     In its Answer, Respondent claims it "is without sufficient information to admit or deny the allegations" in Complaint Paragraph 5 which alleges that, at all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act. Respondent has previously stipulated to the Union's labor organization status in the Stipulated Elected Election Agreement in Case No. 29-RC-288020 (Exhibit 2). Therefore, there is no genuine issue of material fact in Complaint Paragraph 5, and the allegation in Complaint Paragraph 5 should be admitted as true.

20.     In its Answer, Respondent, without elaboration, denies that the Unit constitutes a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act as alleged in Complaint Paragraph 6.  Because Respondent has previously stipulated to the appropriateness of the Unit in the Stipulated Elected Election Agreement in Case No. 29-RC-288020 (Exhibit 2), there is no genuine issue of material fact in Complaint Paragraph 6, and the allegation should be admitted as true.

21.     In its Answer, Respondent admits that the parties entered into the Stipulated Election Agreement (Exhibit 2), and that the NLRB conducted an election which resulted in the issuance of a Tally of Ballots (Exhibit 3) as alleged in Complaint Paragraph 7.  Respondent, denies the remainder of Complaint Paragraph 7, including that the NLRB conducted the election consistent with the Stipulated Election Agreement, that the Decision and Certification of Representative (Exhibit 9) was properly issued, and that, since April 1, 2022, the Union has been the exclusive collective-bargaining representative of the Unit. The issues that Respondent now

denies have already been fully litigated by the parties in the Objections hearing. The Regional Director of Region 28 decided these issues and rejected Respondent's arguments, and Respondent cannot now re-ligate these representation issues in an unfair labor practice proceeding. *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 161 – 162 (1941). While these issues are now currently before the Board in Respondent's Request for Review (Exhibit 10), Respondent is not relieved of its obligation to bargain with the certified representative of its employees pending Board consideration of a request for review. See *Audio Visual Services Grp.,* 365 NLRB No. 84, slip op. at 2 (2017). If the Board denies Respondent's Request for Review, consistent with the Decision and Certification of Representative, the allegations in Complaint Paragraph 7 should be admitted as true.

22.     In its Answer, Respondent admits that the Union has requested that Respondent bargain with the Union as alleged in Complaint Paragraph 8.   Because Respondent is testing the validity of the Union's certification, Respondent denies that the Union is the exclusive collective-bargaining representative of its employees, or that the Union is entitled to bargain collectively on behalf of any employee at Respondent's JFK8 facility. Respondent's partial denial of Complaint Paragraph 8 is based upon its objections to the election which are currently before the Board in Respondent's Request for Review (Exhibit 10). To the extent the Board denies Respondent's Request for Review, the allegations in Complaint Paragraph 8 should be admitted as true.

23.     Complaint Paragraph 9 alleges that, since April 2, 2022, Respondent has failed and refused to bargain with the Union as the exclusive collective-bargaining representative of the Unit. Because Respondent is challenging the Union's certification, Respondent "denies that it has *unlawfully* refused to bargain" with the Union (emphasis added), and further denies that the Union is the collective-bargaining representative of Respondent's employees or entitled to bargain on

their behalf. While the legality of Respondent's refusal to bargain with the Union will ultimately be determined by the validity of the certification, there is no genuine issue of material fact that Respondent refuses to recognize and bargain with the Union. To the extent the Board denies Respondent's Request for Review, the allegations in Complaint Paragraph 9 should be admitted as true.

24.     In its Answer, Respondent denies the allegation in Complaint Paragraph 10 that it is refusing to bargain with the Union to test the certification, denying, additionally, that the Union is entitled to bargain on behalf of Respondent's employees. Respondent, by its counsel, in response to the current charge, previously confirmed Respondent was testing the Board's certification of the Union as the exclusive collective-bargaining representative of the Unit (Exhibit 13). There is no genuine issue of fact in Complaint Paragraph 10, and the allegation should be admitted as true.

25.     In its Answer, Respondent denies the allegations in Complaint Paragraphs 11 through 13, which include both the asserted legal conclusions and appropriate remedies sought by the General Counsel. To the extent the Board denies Respondent's Request for Review, the Board should issue a Decision and Order finding the legal conclusions alleged in Complaint Paragraphs 11 and 12, and requiring Respondent take the remedial actions sought in Complaint Paragraph 13.

26.     In its Answer, Respondent asserts various affirmative defenses, none raising genuine issue of material fact:

a.     In its first affirmative defense, Respondent denies having violated the Act. As there is no factual dispute that Respondent has failed and refused to bargain with the Union since on or about April 2, 2022, to the extent the Board denies Respondent's Request for Review, Respondent, has engaged in unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act.

b.      In its second affirmative defense, Respondent asserts that "the Complaint should be dismissed to the extent that the allegation fails to state a claim upon which relief may be granted." As reflected in Exhibit 14, the Complaint clearly states a claim upon which relief may be granted.

c.      In its third affirmative defense, Respondent asserts that "the Complaint should be dismissed to the extent that it contains allegations that are not a part of the underlying charge." As reflected in Exhibit 12, the underlying unfair labor practice charge contains the allegations currently at issue.

d.      In its fourth affirmative defense, Respondent asserts that the Complaint should be dismissed due to alleged objectionable conduct during the representation election which Respondent argues should render the election invalid. As Respondent's objections to the election are currently before the Board in Respondent's Request for Review (Exhibit 10), to the extent the Board denies Respondent's Request for Review, Respondent's fourth affirmative defense should be rejected.

e.      In its fifth affirmative defense, Respondent asserts that the Complaint is premature, as the Board has not yet ruled on Respondent's Request for Review. Respondent provides no legal authority for its assertion. As Respondent's Request for Review is currently before the Board, the Board can issue its decision on the current motions and the underlying Complaint concurrent with, or subsequent to its decision on Respondent's outstanding Request for Review.

f.      In its sixth affirmative defense, Respondent references Section 102.15 of the Board's Rules and Regulations and asserts that the Complaint should be dismissed for failure

to include a fixed place and time for hearing. This is incorrect. Under Section 102.15, a complaint is required to contain:

> (a) A clear and concise statement of the facts upon which the Board asserts jurisdiction, and (b) A clear and concise description of the acts which are claimed to constitute unfair labor practices, including, where known, the approximate dates and places of such acts and the names of Respondent's agents or other representatives who committed the acts.

The current Complaint meets these requirements. As this case involves Respondent's intentional refusal to bargain with the Union to test the Board's certification, there is no genuine issue of fact necessitating a formal proceeding before an Administrative Law Judge. In this context, the Complaint is adequate under the Board's Rules and Regulations, and Respondent's sixth affirmative defense should be rejected.

g.      Respondent's seventh listed affirmative defense is not substantive, but rather "reserves the right to assert additional defense during the course of this action." As Respondent has provided not persuasive substantive affirmative defense to the Complaint, Respondent's assertion that the Complaint should be dismissed should be rejected.

27.     The General Counsel submits that prospectively oriented relief, standing alone, would be far from adequate to meaningfully remedy Respondent's violation of the Act or to effectuate the core policies underlying the Act. In several pending cases, the Board has severed and retained for further consideration the General Counsel's arguments that the Board should overrule its flawed decision in *Ex-Cell-O Corp.*, 185 NLRB 107 (1970), and adopt a compensatory make-whole remedy. E.g., *Longmont United Hospital*, 371 NLRB No. 162, slip op. at 2 (2022). In accordance with the General Counsel's arguments in those cases, the Board should overrule *Ex-Cell-O* and its progeny, apply any change in law retroactively to this and other pending cases, and

order Respondent to make the employees at issue here whole for the lost opportunity to engage in collective bargaining at the time and in the manner contemplated by the Act.

28.     Respondent's Answer does not raise any *bona fide* issue of material fact and, in essence, denies only the legal conclusions to be drawn from the factual allegations in the Complaint. To the extent Respondent's Answer seeks to challenge the conduct of the related representation election in Case No. 29-RC-288020, Respondent may not re-litigate in an unfair labor practice proceeding a representation issue that was or could have been previously litigated in a prior representation proceeding. *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 161 – 162 (1941). As Respondent's Request for Review (Exhibit 10) is currently before the Board, the Board can appropriately consider Respondent's objections to the conduct of the election and its challenges to the Regional Director's Decision and Certification of Representative (Exhibit 9) in its decision on the Request for Review. To the extent the Board denies Respondent's Request for Review, there is no genuine issue of material fact in this case, and summary judgment as a matter of law is appropriate.

WHEREFORE, Counsel for the General Counsel respectfully moves that the Board grant the Motion to Transfer Case to the Board and Motion for Summary Judgment, find all of the allegations of the Complaint to be true, and issue an appropriate Decision and Order finding that Respondent has violated Section 8(a)(5) and (1) of the Act as alleged, and requiring Respondent to meaningfully remedy its unfair labor practices consistent with the remedies sought in the General Counsel's Complaint.

Dated:  August 23, 2023

Brent Childerhose
Counsel for the General Counsel
National Labor Relations Board, Region 29
Two Metro Tech Center, Suite 5100
Brooklyn, NY 11201-3838

# EXHIBIT 3

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**


**AMAZON.COM SERVICES LLC**

   **and**                                              **Case No. 29-CA-310869**

**AMAZON LABOR UNION**


## **COMPLAINT**

     This Complaint is based on a charge filed by Amazon Labor Union (the Union). It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Amazon.com Services LLC (Respondent) has violated the Act as described below.

     1.     The charge in Case No. 29-CA-310869 was filed by the Union on January 25, 2023, and a copy was served on Respondent by U.S. mail that same day.

     2.     At all material times, Respondent, a Delaware limited liability company with a Fulfillment Center located at 546 Gulf Avenue, Staten Island, New York (JFK8 Facility) has been engaged in the retail sale of consumer products throughout the United States.

     3.     During the past twelve-month period, which period is representative of its operations in general, Respondent, in conducting its business operations described above in paragraph 2:

          (a)     derived gross revenues in excess of $500,000, and

          (b)     purchased and received at its JFK8 Facility goods and supplies valued in excess of $5,000 directly from enterprises located outside the State of New York.

4.      At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

5.      At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

6.      The following employees of Respondent (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> **INCLUDED**: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's JFK8 building located at 546 Gulf Avenue, Staten Island, New York.

> **EXCLUDED**: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

7.      (a)      Pursuant to a stipulated election agreement entered into by the parties in Case No. 29-RC-288020, the NLRB conducted an election on various dates in March 2022, among Unit employees described above in paragraph 5.

(b)      On April 1, 2022, a Tally of Ballots in Case No. 29-RC-288020 issued showing a majority of the valid votes were cast for the Union.

(c)      On January 11, 2023, a Regional Director of the Board certified the Union as the exclusive collective-bargaining representative of the Unit.

(d)      At all material times since April 1, 2022, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Unit.

8.      On or about April 2, 2022, and on multiple subsequent occasions, the Union, by letter, requested that Respondent bargain collectively with the Union as the exclusive collective-bargaining representative of the Unit employees.

9.      Since on or about April 2, 2022, Respondent has failed and refused to bargain with the Union as the exclusive collective-bargaining representative of the Unit.

10.     Respondent's purpose in refusing to bargain with the Union is to test the certification of the Union as the exclusive collective-bargaining representative of the Unit issued by a Regional Director of the Board on January 11, 2023, in Case No. 29-RC-288020.

11.     By the conduct described above in paragraphs 9 and 10, Respondent has failed and refused to bargain collectively and in good faith with the Union as the exclusive collective-bargaining representative of the Unit, and thereby has been engaging in unfair labor practices within the meaning of Section 8(a)(l) and (5) of the Act.

12.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

13.     As part of the remedy for the unfair labor practices alleged above, and to fully remedy the unfair labor practices, the General Counsel seeks an order requiring Respondent:

        (a)     to make the bargaining-unit employees whole for the lost opportunity to engage in collective bargaining at the time and in the manner they were entitled to under the Act;

        (b)     to physically post the Notice to Employees in all locations where Respondent typically posts notices to employees, including but not limited to employee breakrooms (Table Top displays) and in all "inStallments" (employee bathrooms and bathroom stalls), and that Respondent electronically distribute the Notice to Employees by all methods that Respondent communicates with its employees, including but not limited to email, text message, social media, Voice of Associates (VOA) and applications, including the Amazon A to Z app and its "inSites." The physical and electronic Notice shall be in English and in Spanish and any other languages deemed necessary to apprise employees of their Section 7 rights;

3

(c)    by an appropriate Respondent Representative, to be determined and approved by the Regional Director, or in the alternative, an Agent of the NLRB to read the Notice to Employees, in English and Spanish and any other languages deemed necessary, in the presence of a Board agent and a representative of the Charging Party Union, at a meeting(s) convened by Respondent for its employees, such meeting(s) to be scheduled during work hours to ensure the widest possible employee attendance;

(d)    to hand deliver and email the signed Notice to Employees to all supervisors, managers and agents, along with written instructions signed by an appropriate Respondent representative, to be determined and approved by the Regional Director, directing them to comply with the provisions of the Notice, and provide the Regional Director with written proof of compliance;

(e)    As part of the remedy for Respondent's unfair labor practices alleged above in paragraphs 9 through 11, the General Counsel seeks an Order requiring Respondent to bargain in good faith with the Union, on request, for the period required by *Mar-Jac Poultry Co.,* 136 NLRB 785 (1962), as the recognized bargaining representative in the appropriate unit; and

(f)    all other relief as may be just and proper to remedy the unfair labor practices alleged.

## **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Complaint.  The answer must be **received by this office on or before July 26, 2023, or postmarked on or before July 25, 2023.**  Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.   To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions.  Responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21.  If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a Complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Complaint are true.

Any request for an extension of time to file an answer must, pursuant to Sections 102.22 and 102.2 of the Board's Rules and Regulations, be filed electronically by the close of business on

July 26, 2023. The request should be in writing and addressed to the Regional Director of Region

29.

Dated:  July 12, 2023

_Teresa Poor_
_____

Teresa Poor
Regional Director
National Labor Relations Board
Region 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

# EXHIBIT 4

**UNITED STATES GOVERNMENT**
**National Labor Relations Board**

*Memorandum*



**DATE:**      March 10, 2022

**TO:**        Jennifer Abruzzo
               General Counsel

**FROM:**      Fred B. Jacob
               Solicitor

**SUBJECT:**   *Amazon.com Services, LLC*
               Case 29-CA-261755

A majority of the Board (Chairman McFerran and Members Wilcox and Prouty) authorizes you to institute 10(j) proceedings in this case, as requested.   Members Kaplan and Ring would not authorize 10(j) proceedings.

                                    F.B.J.


cc: Mr. Ohr                  Board Members
    Mr. Bock                 Executive Secretary
    Mr. Lussier
    Ms. Vazquez
    **6,7(C)**