# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC,<br><br>        Plaintiff,<br>  v.<br><br>NATIONAL LABOR RELATIONS<br>BOARD, et al.,<br><br>        Defendants. | Civil Action No. 5:24-cv-01000-XR |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
## PRELIMINARY INJUNCTION

Plaintiff Amazon.com Services LLC (Amazon) is not entitled to a temporary restraining order or preliminary injunction halting, at the eleventh hour, the congressionally mandated procedure and sole avenue for resolving an unfair-labor-practice case affecting 8,000 workers, as Amazon has not satisfied any of the requirements for obtaining this extraordinary relief.

## BACKGROUND

### I. Statutory and regulatory background

Defendant National Labor Relations Board (NLRB)[1] is the federal agency charged with protecting the labor rights of most private-sector employees under the National Labor Relations Act (NLRA or Act), 29 U.S.C. §§ 151-169. The NLRB has a bifurcated structure. Leading one side of the Agency is the five-seat Board, vested with adjudicatory and rulemaking powers to carry out the Act. Each Board member is appointed by the President with the advice and consent of the Senate to serve a staggered term of up to five years. *Id.* § 153(a). Traditionally, the seats on the Board are split between three members from the President's party and two from the opposition. *See* THE DEVELOPING LABOR LAW: THE BOARD, THE COURTS, AND THE NATIONAL LABOR RELATIONS ACT ch. 31, § I.B (John E. Higgins, Jr., ed., 2023) (ebook). Board members can be removed from their positions before the expiration of their terms "by the President, upon notice and hearing, for neglect of duty or malfeasance in office." 29 U.S.C. § 153(a).

Leading the other side of the Agency is the General Counsel, who has "final authority" over the investigation and prosecution of violations of the NLRA, 29 U.S.C. § 153(d), and who acts "independent of the Board's supervision and review." *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 118 (1987). Like Board members, the General Counsel is

---

[1] References to "the NLRB" are to the Agency as a whole; references to "the Board" are to the five-member adjudicative body established by Congress to decide cases under the NLRA.

also appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(d).

But unlike Board members, each General Counsel is appointed to serve a four-year term that

starts with each new (or reconfirmed) officeholder. *Id.* In addition, the NLRA does not restrict

the President's ability to remove the General Counsel. Accordingly, the General Counsel serves

at the pleasure of the President. *See Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir.

2022) (finding that General Counsel could be removed by President at will).

 One of the Board's principal duties is to adjudicate representation cases under Section 9

of the NLRA. 29 U.S.C. § 159. In these non-adversarial cases, *see NLRB v. Air Control Prods. of

St. Petersburg, Inc.*, 335 F.2d 245, 251 (5th Cir. 1964), the NLRB investigates and often resolves

by secret-ballot election whether a collective-bargaining representative—typically, a labor

union—represents or no longer represents a defined bargaining unit of employees. 29 U.S.C. §

159(c); 29 C.F.R. § 102.64(a). For the union to prevail in the election, it must receive a majority

of the votes cast by eligible employees in the bargaining unit. *See* 29 U.S.C. § 159(a).

 Pursuant to Section 3(b) of the Act, 29 U.S.C. § 153(b), the Board has delegated

processing of representation cases to the Regional Directors of the NLRB's 26 regional offices.

*See Delegation of Authority*, 26 Fed. Reg. 3911 (May 4, 1961). After an election is conducted,

any of the parties may file "objections" to the results or conduct of the election. 29 C.F.R.

§ 102.69(a)(8). If potentially meritorious objections are filed, then the Regional Director may

schedule a post-election hearing before a hearing officer. *Id.* § 102.69(c)(1)(ii), (iii). That hearing

will generally result in a decision by the Regional Director either sustaining or overruling the

objections. Depending on the Regional Director's disposition of the objections, the Regional

Director may order a rerun election or may instead issue a certification that a representative has

been selected (a "certification of representative") or rejected (a "certification of results"). *Id.*

§ 102.69(c)(2). The parties can request that the five-seat Board "review any action of a Regional Director," *id.* § 102.67(c), including any decision "disposing of [election] challenges and/or objections," *id.* § 102.69(c)(2). But that is usually one of the last steps in the process; Regional Director or Board decisions in representation cases are not reviewable (at least directly) by any court. *Am. Fed. of Labor v. NLRB*, 308 U.S. 401, 409 (1940).

Another of the Board's primary functions is to adjudicate cases brought by the General Counsel's staff in the NLRB's regional offices alleging that an employer or a labor union has committed an unfair labor practice. 29 U.S.C. § 160. Section 8 of the Act lists various unfair labor practices, such as failing to bargain in good faith, discriminating against employees based on union affiliation, or otherwise interfering with, restraining, or coercing employees who exercise the rights that Section 7 of the Act defines and protects. *Id.* § 158(a), (b), (e). The unfair-labor-practice process is triggered by the filing of a charge by any person who is not an employee of the NLRB.[2] Thereafter, Section 10 of the Act, the Board's Rules and Regulations, and the Board's adjudicatory precedents establish detailed procedures governing the initiation, litigation, disposition, and judicial review of unfair-labor-practice cases. One notable provision is Section 9(d) of the Act, which provides a mechanism for indirect review of representation-case rulings. Under Section 9(d), when a court reviews an unfair-labor-practice order requiring, for example, an employer "to bargain collectively with the representatives of his employees," *id.* § 158(a)(5), the certification and administrative record created in a related representation case are filed with the court and subject to review, *id.* § 159(d). A proceeding in which an employer refuses to bargain to obtain review of a representation ruling is known as a "technical 8(a)(5)" case.

---

[2] The NLRB as an agency possesses no independent investigative authority. *See* 29 U.S.C. § 160(b); *NLRB v. Sears, Roebuck, & Co.,* 421 U.S. 132, 139 (1975).

Another key NLRA provision implicated in this case is Section 10(c), pursuant to which the Board possesses "broad discretionary" authority to remedy unfair labor practices by ordering "such affirmative action . . . as will effectuate the policies of this Act." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215-16 (1964) (citing 29 U.S.C. § 160(c)). The Board has traditionally sought to "restor[e] the situation, as nearly as possible, to that which would have obtained but for the [unfair labor practice]." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941). And consistent with these principles, the Board, with court approval, has often required parties who commit unfair labor practices to not only pay back wages, but also to compensate employees for other foreseeable pecuniary losses that are attributable to the party's unlawful conduct. *Thryv, Inc.,* 372 NLRB No. 22 (2022), slip op. at *11-13 (collecting cases), *enf. granted in part and denied in part on other grounds*, 102 F.4th 727 (5th Cir. 2024).

Importantly, although Board decisions and orders represent final agency action, they are not self-enforcing. Section 10(e) of the Act provides that the Board must seek enforcement of its unfair-labor-practice orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. 29 U.S.C § 160(e). Section 10(f), in turn, provides that any "aggrieved person" may seek review of a final Board order in a court of appeals. *Id.* § 160(f). Only upon enforcement by a court of appeals does a Board order become fully effective against a respondent. *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020).

## II.    Procedural history

The case in which Amazon now seeks emergency relief began almost three years ago, with the filing of a representation petition on December 22, 2021, by the Amazon Labor Union (ALU). ECF No. 1, Compl. ¶ 19. ALU's petition sought to represent a group of approximately 8,000 employees working at Amazon's JFK8 Fulfillment Center in Staten Island, New York. *Id.* ALU and Amazon subsequently reached a stipulated election agreement, and the NLRB's Region

4

29 office in Brooklyn, New York held a secret-ballot election, in which the ALU won by approximately 500 votes.[3] *Id.*

Following ALU's victory, Amazon filed a series of election objections with the Region 29 office on April 8, 2022. *Id.* ¶ 20. On Amazon's motion, the processing of these objections was transferred to the NLRB's Region 28 office in Phoenix, Arizona on April 14, 2022. *Id.* ¶ 22. The parties subsequently participated in a hearing on these objections in June and July 2022. *Id.* ¶ 25. On September 1, 2022, the Hearing Officer issued her Report on Objections, recommending that all objections be overruled. *Id.* On January 11, 2023, in response to Amazon's exceptions to the Hearing Officer's decision, the Regional Director for Region 28 affirmed the Hearing Officer's Report and certified ALU as the exclusive representative of the JFK8 bargaining unit. *Id.* ¶ 26.

On February 9, 2023, Amazon filed a request for review of the Regional Director's decision with the Board. *Id.* The Board, by Chairman McFerran and Member Prouty, recently denied this request for review on August 29, 2024, over the dissent of Member Kaplan. *Id.* ¶ 27.

Meanwhile, while the representation-case proceedings were ongoing, unfair-labor-practice proceedings also commenced. ALU requested to begin bargaining with Amazon on April 2, 2022. *Id.* ¶ 30. Amazon refused to bargain, in order to obtain circuit court review of the Board's representation-case decision through the "technical 8(a)(5)" process. ALU subsequently

---

[3] Meanwhile, on March 17, 2022, the Regional Director for Region 29 filed a Petition for a Temporary Injunction against Amazon in federal district court for the Eastern District of New York. *Id.* ¶ 21. The parties engaged in extensive briefing and discovery, and participated in several hearings regarding this Petition (and an Amended Petition, filed on July 8, 2022) in the Eastern District during the summer and fall of 2022. On November 18, 2022, the district court issued an opinion and order granting (in part) the relief requested by the Regional Director. *King v. Amazon.com Servs., LLC,* No. 22-cv-1479, 2022 WL 17083273, at *3-5, *12 (E.D.N.Y. Nov. 18, 2022), *vacated in part sub nom., Poor v. Amazon.com Servs. LLC,* 104 F.4th 433 (2d. Cir. 2024). On June 12, 2024, the Second Circuit issued an opinion and order vacating the injunction based on appeal filed by Amazon. *Poor v. Amazon.com Servs. LLC*, 104 F.4th at 443-44.

filed a charge with the NLRB's Region 29 office in Brooklyn accusing Amazon of refusing to bargain in violation of Section 8(a)(5) of the NLRA. On July 12, 2023, the Regional Director for Region 29 issued an administrative complaint against Amazon based on this failure to bargain. *Id.* ¶¶ 29, 31-32. On August 23, 2023, the General Counsel filed a Motion for Summary Judgment and Motion to Transfer the unfair-labor-practice proceeding to the Board.[4] *Id.* ¶ 33.

That same day, the Board granted the transfer motion and issued a notice to show cause why the summary-judgment motion should not be granted. *Id.* On September 14, 2023, Amazon filed an opposition to the Motion for Summary Judgment and a Response to the Board's show-cause notice. *Id.* ¶ 34. Nowhere in its opposition did Amazon challenge the Board's authority on constitutional grounds. *See* Amazon.com Services LLC's Opposition to the General Counsel's Motion for Summary Judgment, *Amazon.com Servs. LLC,* No. 29-CA-310869 (Sept. 14, 2023), https://apps.nlrb.gov/link/document.aspx/09031d4583b4ed3d. On August 30, 2024, one day after denying the request for review in the related representation case, the Board issued a second notice to show cause, requesting that the General Counsel and Amazon file supplemental briefing addressing whether the General Counsel's pending Motion for Summary Judgment should be granted. Compl. ¶ 36. The deadline for the parties to respond to this show cause order was initially set for September 13, 2024, but was extended to September 27, 2024, at Amazon's request. *Id.* ¶ 36; *Amazon.com Servs. LLC,* No. 29-CA-310869 (NLRB Sept. 11, 2024) (order extending time), https://apps.nlrb.gov/link/document.aspx/09031d4583e2475f.

On September 5, 2024, Amazon filed the present Complaint in this Court. The Complaint contains three counts alleging that: (1) members of the Board are unconstitutionally insulated

---

[4] This procedure is common in technical 8(a)(5) cases. *See* NLRB Casehandling Manual Part One-Unfair Labor Practice Proceedings, § 10282.1, available at https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/ulp-manual-june-2024.pdf.

from removal; (2) the Board seeks to adjudicate private rights without affording an opportunity

for a jury trial, in violation of the Seventh Amendment; and (3) the Board unconstitutionally

wields executive, judicial, and legislative authority, in violation of the separation of powers

principles in the Constitution. Compl. ¶ 3. In its request for relief, Amazon seeks—among other

things—a declaratory judgment that the Board's removal protections and proceedings are

unconstitutional, and temporary and permanent injunctions preventing the Board from

proceeding against Amazon. *Id.* pp. 21-22.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be]

awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). The

"decision to grant a preliminary injunction is to be treated as the exception rather than the rule."

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357,

363–64 (5th Cir. 2003) (citation omitted). A plaintiff must make "a clear showing" that it is

"entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation

omitted). To make that showing, a plaintiff must establish "(1) a substantial likelihood that

plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable

injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the

threatened harm the injunction may do to defendant, and (4) that granting the preliminary

injunction will not disserve the public interest." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir.

2023), *cert. denied*, 144 S. Ct. 551 (2024) (citation omitted). And a plaintiff must satisfy all four

requirements to obtain a preliminary injunction. *See Wilson v. Off. of Violent Sex Offender

Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.). Irreparable harm, the second factor, must

"without question . . . be satisfied by independent proof, or no injunction may issue." *White v.*

*Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). And such harm must be "likely" and not a mere

possibility. *Winter*, 555 U.S. at 20. Finally, the third and fourth factors of the preliminary

injunction analysis—harm to others and the public interest—"merge when the Government is the

opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

**I.      Amazon is not likely to succeed on any of its claims.**

> **A.   *Amazon fails to establish any constitutional infirmities regarding Board member
> removal protections (Count I).***

>> 1.   <u>Removal protections enjoyed by the Board members are constitutional.</u>

Amazon's first count alleges that Board members are unconstitutionally insulated from

removal by the President. This argument, however, is foreclosed by *Humphrey's Executor v.*

*United States*, 295 U.S. 602 (1935). In that decision, the Supreme Court held that members of the

Federal Trade Commission (FTC), who were part of a multi-member, decisionmaking body of

experts, could be constitutionally insulated from removal by the President. *Id.* at 630-32. The

Court reasoned that Congress's grant of tenure protections was constitutional and did not

interfere with the President's authority because FTC commissioners performed "quasi-legislative

and quasi-judicial" functions. *Id.* at 629. Relying on *Humphrey's Executor*, Congress created the

NLRB less than two months after that decision and modeled it after the FTC. *See* H.R. Rep. 74-

1371, at 4 (1935) (stating that the NLRB "is to have a similar status to that of the Federal Trade

Commission" and describing express removal protections for Board members as "desirable in the

light of" *Humphrey's Executor*), *reprinted in*, 2 NLRB, Legislative History of the National Labor

Relations Act, 1935, at 3255 (1949); *Dish Network Corp.*, 953 F.3d at 375 n.2 (noting that the

NLRB and FTC shared certain salient features).

Amazon contends that because Board members "wield substantial executive power,"

*Humphrey's Executor* does not apply. ECF No. 10, Mot. 9. This position hinges on the assertion that *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), radically upended decades of precedent and practice by supplanting *Humphrey's Executor* with a new legal rule that allows principal officers serving on multi-member boards or commissions to receive removal protections only if they do not exercise "substantial executive power." This is a surprising claim given that *Seila Law* expressly disavowed that it was disturbing any of the Court's prior precedents. In striking down a removal protection in the "novel context" of an agency headed by a single individual, the Court was explicit that its decision did "not revisit our prior decisions allowing certain limitations on the President's removal power." *Id.* at 204.

Indeed, the major premise of Amazon's argument was recently rejected by the Fifth Circuit in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024), *petition for cert. filed*, No. 23-1323 (June 18, 2024). In that decision, the Fifth Circuit addressed a challenge to removal protections for commissioners on the Consumer Product Safety Commission (CPSC), *id.* at 346-47, who receive identical removal protections as NLRB members. *Compare* 15 U.S.C. § 2053(a), *with* 29 U.S.C. § 153(a). The court broadly held that *Humphrey's Executor* "still protects *any* 'traditional independent agency headed by a multimember board.'" 91 F.4th at 352 (quoting *Seila Law*, 591 U.S. at 207) (emphasis added). Notably, the Fifth Circuit found that the CPSC "exercises substantial executive power (in the modern sense)," *Consumers' Rsch.*, 91 F.4th at 353-54, and listed relevant examples of such power, *id.* at 346 (citing CPSC's "authority to promulgate safety standards and to ban hazardous products" as well as its "power to launch administrative proceedings, issue legal and equitable relief, and commence civil actions in federal courts," including actions seeking injunctive relief and even civil monetary penalties). Nonetheless, the Fifth Circuit found that these powers did not

affect the validity of the CSPC commissioners' removal protections.[5]

Further, in assessing the continuing vitality of *Humphrey's Executor* and rejecting arguments nearly identical to the ones Amazon raises here, the Fifth Circuit identified three key characteristics of the CPSC that make its removal restrictions distinguishable from those that the Supreme Court declared unconstitutional in *Seila Law*. As enumerated below, all three features apply with equal force to the NLRB.

1.      The Fifth Circuit indicated that "the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." 91 F.4th at 354 (quoting *Seila Law*, 591 U.S. at 220) (cleaned up). "In other words, historical pedigree matters," and unlike agencies where removal protections were found unconstitutional, the Fifth Circuit found that the CPSC "has history on its side." *Id*. If this is true for the CPSC— which was founded in 1972—it is undoubtedly so for the NLRB, which was founded in 1935, modeled after the FTC, and survived an immediate constitutional challenge after its enactment. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 49 (1937); *Dish Network*, 953 F.3d at 375 n.2.

2.      The Fifth Circuit noted that "the [CPSC] does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the [Consumer Financial Protection Bureau (CFPB)] unconstitutional"—that is, leadership by a single director, who was shielded from removal by the President. 91 F.4th at 354. The NLRB, as "a prototypical traditional independent

---

[5] In comparison, the Board's authority is significantly less robust. Although the Board also has rulemaking authority, it cannot initiate administrative proceedings, seek civil monetary penalties, or provide any other form of nonremedial relief. 29 U.S.C. § 160(a), (c). In addition, the Board's orders are not self-enforcing. *Dish Network*, 953 F.3d at 375 n.2. As such, the justification for upholding the removal protections at issue here is at least as strong as it was in *Consumers' Research*, assuming the Board even exercises "substantial executive power."

agency, run by a multimember board," falls equally within this reasoning. *Id.* (citation omitted).

3.      The Fifth Circuit found that "[CPSC] does not have any of the features that combined to make CFPB's structure 'even more problematic' in *Seila Law*." *Id.* As with the CPSC, the NLRB's "staggered appointment schedule means that each President *does* have an opportunity to shape [its] leadership and thereby influence its activities." *Id*. (cleaned up). Nor does the NLRB "receive funds outside the appropriations process," such that the President would be denied influence over the agency's activities "via the budgetary process." *Id.* at 355 (cleaned up). Thus, the Board lacks any of the features that could take it outside the scope of *Humphrey's Executor*. *See Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *7 (N.D. Ill. Sept. 13, 2024) ("The organizational features of the NLRB match the profile of an agency that fits within the parameters of the *Humphrey's Executor* removal exception.").

Amazon's contrary understanding of the law on removal restrictions relies heavily on another district court's non-binding decision granting a preliminary injunction in *Space Exploration Technologies Corp. v. NLRB* ("*SpaceX*"), ---- F. Supp. 3d ----, 2024 WL 3512082 (W.D. Tex. July 23, 2024), *appeal docketed,* 24-50627 (5th Cir. Aug. 1, 2024). There, the district court erroneously found that removal protections for Board members are unconstitutional, based on three faulty premises.

Initially, the court determined that "NLRB members clearly wield substantial executive power through their administrative, policymaking, and prosecutorial authority," by dint of the Board's authority to determine bargaining units in representation cases, decide unfair-labor-practice cases, seek enforcement of final orders, and appoint inferior officers. *Id.* at *3. But the court did not explain why that matters in light of the Fifth Circuit's holding in *Consumers' Research* that expert, multi-member bodies can receive removal protections even if they wield

"substantial executive power." 91 F.4th at 353-54.

Next, the court put undue weight on the fact that Board members are not removable for "inefficiency," while FTC commissioners are. 2024 WL 3512082, at * 4. Again, *Consumers' Research* points the opposite way. The CPSC commissioners in that case, just like Board members here, also could *not* be removed for inefficiency, yet the Fifth Circuit found their removal protections constitutional. 91 F.4th at 346 (noting CPSC and FTC are agency "twins" because both officials can be removed only "for cause"). Accordingly, the particular grounds for Board member removal in the NLRA —i.e., for neglect of duty and malfeasance—do not interfere with the president's removal authority. *See Alivio Med. Ctr.*, 2024 WL 4188068, at *8 & n.5; *YAPP USA Auto. Sys. v. NLRB (YAPP)*, No. 24-12173, 2024 WL 4119058, at *6 n.4 (E.D. Mich. Sept. 9, 2024) (rejecting arguments that the President's inability to remove Board members for inefficiency violates the Constitution), *appeal docketed,* No. 24-1754 (6th Cir. Sept. 9, 2024).

Finally, the court in *SpaceX* erroneously applied the Fifth Circuit's holding in *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, to Board member removal protections. 2024 WL 3512082, at *4. But in *Exela*, the Court of Appeals found that the President had the authority to remove the NLRB's *General Counsel* at will. 32 F.4th at 445. As noted above (p. 2), Congress did not grant the General Counsel *any* statutory removal protections. *Id.* at 443. And this makes sense: the General Counsel—a unitary officer with final authority over all unfair-labor-practice investigations and prosecutions—plainly does not fall within the holding of *Humphrey's Executor*, which is limited to those serving on multi-member boards and commissions. *Id.* at 444. Contrary to the suggestion of the court in *SpaceX* regarding the Board's supposed exercise of "prosecutorial authority," 2024 WL 3512082 at *4, the Fifth Circuit held in *Exela* that the NLRA

creates "a stark division of labor between the General Counsel and the Board," with the Board exercising "quasi-legislative, quasi-judicial functions," and the General Counsel performing "quintessentially prosecutorial functions." 32 F.4th at 443.[6] *Exela* therefore supports Defendants, as it confirms that a great deal of the "executive power" that Amazon attributes to the Board actually flows through the NLRB's removable-at-will General Counsel.[7]

At bottom, Amazon's argument fails even on its own terms as Amazon cannot show that Board members somehow exercise more "substantial" executive power than FTC or CPSC commissioners whose removal protections are indisputably valid under precedent that binds this Court. The NLRB is a traditional independent agency headed by a multi-member board, and *Humphrey's Executor* protects the members of any such board from arbitrary removal. Whatever else may be said about the types of powers wielded by an agency or distinctions of statutory language, the Fifth Circuit has spoken clearly, and that clear statement precludes Amazon from showing a likelihood of success on the merits of this claim.

  2. <u>Amazon failed to show that the Board members' removal protections cause harm.</u>

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court made clear that removal-restriction problems are materially distinct from officer-appointment problems. The Court held

---

[6] Although the Board's sparingly exercised authority under Section 10(j) of the Act, 29 U.S.C. § 160(j), to seek temporary injunctions in district court pending the Board's resolution of unfair-labor-practice cases has at times been described as "prosecutorial," this is insufficient to remove the Board from the scope of *Humphrey's Executor*. The FTC and the CPSC have the power to authorize similar injunction lawsuits. *See* 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g).

[7] Indeed, the Western District of Michigan recently affirmed, in a persuasively reasoned decision, why removal protections for Board members are constitutional. *YAPP*, 2024 WL 4119058, at *6-8. As did the Northern District of Illinois. *Alivio Med. Ctr.*, 2024 WL 4188068, at *7-9. The Southern District of Texas's recent decision in *Energy Transfer v. NLRB* provides no support for Amazon's arguments regarding Board member removability, as that decision solely addressed ALJ removability arguments that are not present here. --- F. Supp. 3d ---, No. 24-cv-198, 2024 WL 3571494, at *2 (July 29, 2024), *appeal docketed*, 24-40533 (5th Cir. Aug. 16, 2024).

that when an official is "properly *appointed*," there is no claim that he "exercise[d]…power that [he] did not lawfully possess," and thus, "there is no reason to regard any of the actions taken…as void." *Id.* at 257-58. The Court explained that a showing of an infirm removal provision, in the abstract, is not enough to sustain a cause of action; rather, a plaintiff must show that the removal provision "cause[d] harm" to them. *Id.* at 259-60.

Subsequently, the Fifth Circuit explained that under *Collins*, there are "three requisites for proving harm" for removal claims: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*").[8] This sets a high bar, and every other circuit court has followed suit in requiring a showing of causal harm. *See K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757-58 (10th Cir. 2024); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022); *Calcutt v. FDIC*, 37 F.4th 293, 318–20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023). Unsurprisingly then, following *Collins* and *CFSA*, the Fifth Circuit has affirmed the dismissal of a complaint for failure to state a claim where the plaintiffs failed to allege facts sufficient to establish causal harm. *Collins v. Dep't of Treasury*, 83 F.4th 970, 982-84 (5th Cir. 2023). The law is thus settled: "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or

---

[8] An unrelated holding from *CFSA* was subsequently reviewed and reversed by the Supreme Court. *See* 601 U.S. 416 (2024). The Fifth Circuit then formally reinstated the portion of its opinion addressing *Collins*. *See* 104 F.4th 930 (5th Cir. 2024).

would cause) them harm." *Id.* at 982 (quoting *CFSA*, 51 F.4th at 632).

This settled aspect of removal jurisprudence confirms all the more that Amazon is not likely to succeed on its claim. Amazon satisfies none of the requirements to show compensable harm under *CFSA*. To put a finer point on it, Amazon put forth zero evidence of a desire by the President to remove any of the four sitting Board members (two of whom he appointed and a third he designated as Chairman), much less a desire inhibited by the Board members' removal restrictions. Nor is there any alleged connection between the President's hypothetical failure to remove a Board member (which here is completely counterfactual) and any agency actions challenged by Amazon. Accordingly, *Collins v. Yellen, Collins v. Dep't of Treasury*, and *CFSA* combined instruct that Amazon's removal claim is fit for dismissal, not the award of an extraordinary remedy.[9]

> B. *Amazon cannot establish that the remedies sought in this case implicate the Seventh Amendment (Count II).*

> > 1. Amazon's Seventh Amendment claim is beyond this Court's subject-matter jurisdiction.

Amazon puts the cart before the horse because it has failed to establish subject-matter jurisdiction over a non-structural, as-applied claim concerning a make-whole remedy the Board might or might not order in an unfair-labor-practice case.[10] *See* Mot. 10-13. In determining whether an exclusive statutory review scheme such as the NLRA[11] precludes district court

---

[9] As we address below in Section II, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) does not alter this analysis. That decision addressed solely jurisdiction, not entitlement to injunctive relief.

[10] By contrast, the NLRB does not dispute that subject-matter jurisdiction exists for Amazon's removal claim, based on the Supreme Court's decision in *Axon*.

[11] It is beyond cavil that the NLRA expresses a clear congressional intent to limit district court jurisdiction over NLRB proceedings. *E.g., Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) (holding that district courts "have a very very minor role to play in the statutory scheme").

jurisdiction, the Supreme Court has established a three-part inquiry: (1) does "precluding district court jurisdiction . . . foreclose all meaningful judicial review"; (2) is the challenge "wholly collateral" to the agency's normal proceedings; and (3) does the claim fall within "the agency's expertise?" *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 186 (2023).

Amazon's Seventh Amendment claim rests on the potential that, if the Board finds that Amazon has engaged in unlawful conduct, it may require Amazon to provide "a compensatory make-whole remedy" to affected employees. Mot. 13.[12] This type of claim fails all three *Axon* elements. First, *if* the Board ever orders the remedies about which Amazon complains, that matter will be subject to review in a court of appeals. *See, e.g.*, *NLRB v. USPS*, 477 F.3d 263, 268-71 (5th Cir. 2007) (reviewing NLRB's remedial authority); *NLRB v. Haberman Const. Co.*, 641 F.2d 351, 368-70 (5th Cir. 1981) (en banc) (same); *Tex. Gulf Sulphur Co. v. NLRB*, 463 F.2d 778, 779 (5th Cir. 1972) (per curiam) (same).[13] If the Board determines that the requested remedies are not warranted (which would accord with extant Board precedent),[14] there would be no need to address the constitutional issue at all. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012) (finding jurisdiction lacking where "preliminary questions unique to the employment

---

[12] Amazon casts this remedy as arising out of the Board's recent decision allowing the recovery of direct or foreseeable pecuniary harms in *Thryv, Inc.,* 372 NLRB No. 22 (Dec. 13, 2022), *enf. denied on other grounds,* 102 F.4th 727 (5th Cir. 2024). *See* Compl. ¶¶ 65-69. But in reality, the General Counsel seeks a different type of relief in the unfair-labor-practice case that makes employees "whole for the lost opportunity to engage in collective bargaining at the time and manner contemplated by the Act." ECF No. 10-2, at 36-38; *see also* pp.19-20, below.

[13] Indeed, as discussed in greater detail below, pp. 29-30, by filing this complaint at such a late date in the administrative process, Amazon could potentially delay the meaningful judicial review which it now claims is needed.

[14] *Ex-Cell-O-Corp.,* 185 NLRB 107 (1970), *rev'd sub nom. Int'l Union of United Autoworkers v. NLRB,* 449 F.2d 1046 (D.C. Cir. 1971); *see* Amazon's Opposition to General Counsel's Motion for Summary Judgment, at 10, *Amazon.com Servs. LLC,* No. 29-CA-310869 (Sept. 14, 2023) (noting that "[t]he General Counsel asks the Board to overrule *Ex-Cell-O Corp.*"), https://apps.nlrb.gov/link/document.aspx/09031d4583b4ed3d.

context may obviate the need to address the constitutional challenge"). This renders Amazon's Seventh Amendment claim a far-cry from the "structural" challenges that have been found to trigger district court jurisdiction. *Axon*, 598 U.S. at 193. Second, determining what remedy should flow from a given violation of the NLRA is in no sense collateral to a Board proceeding; it is what the agency does on a day-to-day basis. Amazon's Seventh Amendment claim thus presents a question of "how [the NLRB's] power [is] wielded," not the "power generally" of the agency. *Axon*, 598 U.S. at 193. And finally, the Board's authority to fashion remedies under Section 10(c) has long been recognized as a core area of Board expertise. *Phelps Dodge Corp.*, 313 U.S. at 194. Ultimately, not one of the *Axon* elements favors district court jurisdiction over the Seventh Amendment claim.

> 2. Amazon's Seventh Amendment claim *is* contrary to controlling law.

As laid out by the Fifth Circuit in *Jarkesy v. SEC*, the Seventh Amendment "analysis [] moves in two stages. First, a court must determine whether an action's claims arise at common law under the Seventh Amendment. Second, if the action involves common law claims, a court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." 34 F.4th 446, 452 (5th Cir. 2022), *affirmed in rel. part*, ---- U.S. ----, 144 S. Ct. 2117 (2024).

Here, the analysis can proceed in reverse order because the public-rights exception alone is sufficient to defeat Amazon's Seventh Amendment claim. The Fifth Circuit and Supreme Court have both affirmed the continuing vitality of this doctrine, holding that Congress can insulate even legal claims from the Seventh Amendment where they involve public rights. To determine whether a claim fails within this exception, the Supreme Court examines whether the statutory claim "borrow[s] its cause of action from the common law." *SEC v. Jarkesy*, 144 S. Ct.

2117, 2137 (2024); *see Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 43 (1989) (finding right

to jury trial based, in part, on fact that fraudulent conveyance actions were brought at law). In

*Jarkesy*, this exception was held inapplicable because the securities fraud cause of action was

"derive[d] from, and [] interpreted in light of, their common law counterparts." *Jarkesy*, 144 S.

Ct. at 2138. In so holding, however, the Court distinguished and endorsed the application of the

exception in its prior decision in *NLRB v. Jones & Laughlin Steel Corp.* because NLRA claims

are "unknown to the common law." *Id.* (citation omitted). And, contrary to Amazon's arguments

(Mot. 12), it is well-settled law that the rights protected under the NLRA are public, not private,

rights. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940) ("The proceeding authorized to be

taken by the Board under the National Labor Relations Act is not for the adjudication of private

rights . . . . The Board acts in a public capacity to give effect to the declared public policy of the

Act[.]"); *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943) (claims arising under the

NLRA "vindicate public, not private rights"). Accordingly, the public-rights exception applies to

claims under the NLRA, and therefore the Seventh Amendment does not apply. *See YAPP*, 2024

WL 4119058, at *12.

  Even assuming the public-rights exception does not apply, Amazon's claims fail because

NLRA claims do not "arise" under the common law. *Jarkesy*, 34 F.4th at 453. Over eighty years

ago, the Supreme Court in *Jones & Laughlin* determined a similar "contention under the Seventh

Amendment [to be] without merit." 301 U.S. at 49. The Fifth Circuit reached this exact

conclusion in 1936 in *Agwilines, Inc. v. NLRB*, noting that the "rights and remedies" afforded

under the NLRA were not "generally known and enforced at common law by jury trial." 87 F.2d

146, 150 (5th Cir. 1936). Indeed, the NLRA's substantive rights "were not only unknown, they

were *obnoxious* to the common law." *Id.* (emphasis added).

Finally, even on the question of the nature of the remedy, the Seventh Amendment right does not attach. As the Supreme Court explained in *SEC v. Jarkesy*, the Seventh Amendment was triggered there because the monetary penalties sought by the SEC were "designed to punish and deter, not to compensate." 144 S. Ct. at 2130. "What determines whether a monetary remedy is legal is if it designed to punish or deter the wrongdoer, or, on the other hand, solely 'to restore the status quo.'" 144 S. Ct. at 2129 (quoting *Tull v. United States,* 481 U.S. 412, 422 (1987)). The SEC remedies, which had the potential to far exceed any loss to victims and could be directly pocketed by the agency, clearly constituted "a penalty [that] by definition does not restore the status quo and can make no pretense of being equitable." *Id.* at 2130 (cleaned up).

The "monetary penalties" in *Jarkesy* are nothing like the relief sought in this case. As an initial matter, the underlying administrative complaint mentions nothing about consequential relief; rather, it merely seeks "to make bargaining-unit employees *whole* for the lost opportunity to engage in collective bargaining at the time and in the manner they were entitled to under the Act." ECF No. 10-2, at 42. Contrary to Amazon's assertions, there is no mention of *consequential* relief in the complaint. Thus, Amazon's constitutional concerns—which appear to be directed towards a *Thryv*-type remedy that is not being sought in this case—are misplaced.[15]

But even setting that aside, *Thryv* remedies do not trigger Seventh Amendment concerns. As the Board explained, *Thryv* sought to "standardiz[e] our make-whole relief to expressly include the direct or foreseeable pecuniary harms suffered by affected employees . . . to more fully effectuate the make-whole purposes of the Act." 372 NLRB No. 22, at 7. This desire to standardize remedies rested on the fact that "[w]e cannot fairly say that *employees* have been *made whole* until they are fully compensated for these kinds of pecuniary harms[.]" *Id.* at 9–10

---

[15] *See* n.12, above.

(emphasis added). In other words, *Thryv* remedies are focused entirely on equitable considerations of ensuring that the *victims* of unfair labor practices are made *whole*.[16] This is the opposite of the monetary penalties in *Jarkesy*, which are directed at the *company*, as a wrongdoer, and are designed to *punish* and *deter* future misconduct—remedies that, the Court explained, are available only at law. While "the remedy [was] all but dispositive" in favor of the challenger in *Jarkesy*, 144 S. Ct. at 2129, it is anything but dispositive in favor of Amazon here, particularly because the NLRA claims at issue are "unknown to the common law." *Jones & Laughlin*, 301 U.S. at 48–49.[17]

> ### C.  *Amazon is not likely to establish district court jurisdiction nor prevail on its combined-functions claim (Count III).*

Amazon cannot prevail on its vague and unsupported combined-functions claim. First, there are serious questions regarding whether this Court can exercise jurisdiction over this claim. To the extent that Amazon's claim simply reiterates arguments that the remedies the Board is seeking in the underlying administrative proceeding matter are inappropriate, it fails to meet the *Axon* standard for subject-matter jurisdiction in this Court. *See* Section I.B.1, above; *see also* Mot. 15–16 (arguing that the "the Board has also taken it upon itself to adjudicate private

---

[16] Amazon suggests that the remedies ordered in *Thryv* go beyond the Board's statutory authority. Mot. 10–11. This argument is irrelevant to Amazon's Seventh Amendment claims, and in any event is rebutted by decades of precedent. *See Thryv, Inc.,* 372 NLRB No. 22, at 11–13 (collecting cases).

[17] Amazon overreads *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993), to imply that make-whole relief was unavailable in courts of equity. Mot. 11. To the contrary, the Court recognized that "[a]t common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond its authority." *Id.* at 256 (cleaned up). Thus, the Court's holding there did not rest upon any notion that make-whole relief was unavailable in equity; instead, the Court found that expanding ERISA's statutory text of "equitable relief" to include all relief available at equity, would render certain statutory language "superfluous," contrary to congressional intent. *Id.* at 258.

rights"). And to the extent this claim rests on the notion that the Board's ability to authorize injunctive relief under Section 10(j) is constitutionally problematic, 10(j) actions are relatively rare, and thus this is not the type of claim envisioned by *Axon* alleging that "an agency is wielding authority unconstitutionally in all or a broad swath of [its] work."[18] *Axon*, 598 U.S. at 189.

Aside from these jurisdictional considerations, case law, including that of the Fifth Circuit, universally rejects the proposition that the mere combination of prosecutorial and adjudicative functions in a single agency violates due process. *See, e.g.*, *Air Prods. & Chems., Inc. v. FERC*, 650 F.2d 687, 709–10 (5th Cir. 1981) (courts have "uniformly held" that combining investigative, prosecutorial, and judicial functions does not establish a due process violation). As the Fifth Circuit recently found in a case rejecting a challenge alleging that the FTC improperly serves as both prosecutor and judge, "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 56 (1975)). The Fifth Circuit explained that "courts cannot 'presume bias' merely from the institutional structure of an agency." *Id*. (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999)). This rationale fully encompasses Amazon's argument, where an adjudicatory agency may merely authorize court litigation seeking

---

[18] The Board seeks injunctive relief under Section 10(j) when its usual processes may be rendered ineffective due to the passage of time. *See* 29 U.S.C. § 160(j); 29 C.F.R. § 101.37; *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975). It is quite rare for the Board to institute such proceedings. In fiscal year 2023, out of 19,869 unfair-labor-practice charges filed by the public, the Board granted authorization to file a 10(j) petition only 14 times, resulting in a total of 7 petitions actually filed in court. NLRB, *NLRB Performance and Accountability Report, FY 2023*, at 27, 86, https://www.nlrb.gov/sites/default/files/attachments/pages/node-130/nlrb-fy2023-par-508.pdf.

temporary relief while an independent officer initiates and prosecutes the administrative action.

Amazon provides no relevant precedent to support its position. First, its reliance on *Williams v. Pennsylvania*, s*ee* Mot. 14, a death-penalty case, is deeply inapposite, given the nature of the case and the far more substantive involvement of the prosecutor. 579 U.S. 1, 11–14 (2016) (finding that the decision to authorize seeking the death penalty "amounts to significant, personal involvement in a critical trial decision"); *see also Meta Platforms, Inc. v. FTC*, --- F. Supp. 3d ---, No. 23-3562 (RDM), 2024 WL 1121424, at *15 n.4 (D.D.C. Mar. 15, 2024) (distinguishing *Williams* on the ground that it involved a "criminal proceeding[] before a judge, not [an] administrative proceeding[]"), *appeal docketed*, No. 24-5054 (D.C. Cir. Mar. 15, 2024). In addition, a number of circuit courts have rejected the notion that the Board's authorization of 10(j) relief deprives unfair-labor-practice respondents of neutral decisionmakers. *See, e.g.*, *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998) ("[W]e . . . join other circuits in holding that the Board's authority under the Act to seek preliminary injunctive relief against an employer in the district court does not deprive the employer of a neutral decisionmaker in subsequent proceedings before the Board."); *Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881, 888 (6th Cir. 1989) ("Indeed, just as there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding, there is no incompatibility between the agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute.") (emphasis removed); *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37 (2d Cir. 1981) (rejecting due process argument as "untenable" and noting that "[i]n seeking an injunction under section 10(j) . . . the Board does not decide the ultimate merits of a labor dispute, but need show only that there is reasonable cause to believe that unfair labor practices have been committed.") (cleaned up). And

Amazon's reliance on the Arizona Supreme Court's decision in *Horne v. Polk*, *see* Mot. 15, is even further afield. In that case, a special attorney general had made the final agency decision to affirm her own order over an administrative law judge's recommendation, without a board or commission reviewing that decision. 242 Ariz. 226, 228–29 (2017). The Board does not affirm, reverse, or even *consider* an earlier decision to seek Section 10(j) relief when it issues final decisions in cases where such relief was sought; it instead decides the merits of those cases on a full record.

Finally, Amazon's claim that the Board violates separation of powers when it awards certain forms of make-whole relief also fails to withstand scrutiny. As discussed above (p. 18), it is beyond dispute that the rights protected under the NLRA are public, not private, rights. So long as the rights adjudicated by Board are public, and they are, there can be no Article III violation. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) ("When determining whether a proceeding involves an exercise of Article III judicial power, this Court's precedent have distinguished between 'public rights' and 'private rights.' Those precedents have given Congress significant latitude to assign adjudication of public rights to entities other than Article III courts.") (citation omitted); *Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 298–99 (5th Cir. 2015) ("[W]hen the Board brings an enforcement action under the Act, it acts in the public interest, even when it obtains money damages on behalf of private persons.").[19] In sum, nothing about Amazon's combined-functions claim shows any promise of succeeding.

## II.     Amazon failed to establish that it will experience any irreparable harm.

Amazon fails to offer "independent proof" of irreparable harm, let alone establish that

---

[19] Again, Amazon's arguments here seem to depend in part on the Board's decision in *Thryv*. *See* Mot. 15–16. But as noted above at n.12, the remedy at issue in this case was not even addressed by the Board in *Thryv*.

such harm is likely to occur. *See White*, 862 F.2d at 1211. The presence of constitutional claims

does not obviate an injunctive-relief movant's burden to show irreparable harm because not

every constitutional injury warrants injunctive relief. *Sheffield v. Bush*, 604 F. Supp. 3d 586, 609

(S.D. Tex. 2022). All Amazon's claims suffer from this fundamental defect.

Starting with the removal protections, as discussed above, in Section I.A.2, Amazon has

failed to allege any causal harm attributable to the allegedly unconstitutional removal protections

for Board members. Amazon cannot establish that harm related to its removal claim is

irreparable, when it is not entitled to any remedy on that claim at all.

In the face of this binding precedent concerning causal harm, Amazon's primary position

is that *Axon* makes proof of irreparable harm unnecessary. Mot. 18. But *Axon* did not address

injunctive relief and does not bear on the question of irreparable harm. Rather, the narrow

question decided in *Axon* was whether a district court had jurisdiction to hear structural

constitutional challenges to ongoing agency proceedings. *See FTC v. U.S. Anesthesia Partners,*

*Inc.*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024) (unpublished order dismissing appeal)

("*Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. § 1331 . . . .");

*Leachco, Inc. v. CPSC*, 103 F.4th 748, 759 (10th Cir. 2024) ("We will follow the Supreme

Court's words of caution when interpreting the same 'here-and-now injury' language from

*Axon*—we will not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a

party's entitlement to relief based on an unconstitutional removal provision.'") (quoting *Collins*,

594 U.S. at 258 n.24); *accord Kim v. FINRA*, 698 F. Supp. 3d 147, 169 n.19 (D.D.C. 2023). As

explained by the Tenth Circuit, the "here-and-now injury" language from *Axon* derives from

*Seila Law*, in which the Supreme Court considered an argument whether the petitioner had

standing to challenge the CFPB's structure and whether the appropriate context for assessing the

constitutionality of a removal provision is a contested removal. *Leachco*, 103 F.4th at 759 (citing *Seila Law*, 591 U.S. at 212). Then, in *Collins*, the Supreme Court clarified its "here-and-now" language, explaining that "what [it] said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Leachco*, 103 F.4th at 759 (quoting *Collins*, 594 U.S. at 258 n.24). This Court should not accept Amazon's invitation to recast a standing-based analysis into a license to dispense with an irreparable-harm inquiry whenever a removal-restrictions challenger seeks injunctive relief.

Recent district court decisions—all of which are now on appeal—holding that *Axon* obviates any independent harm requirement for removal claims involving NLRB officials do not hew correctly to these principles or Fifth Circuit precedent. In *Energy Transfer, LP v. NLRB*, the Southern District of Texas attempted to distinguish *Collins*'s harm requirement on the grounds that it only applied to agency actions that had already occurred, and that the showing of harm was lessened when challenging future agency action.[20] 2024 WL 3571494, at *4. Similarly, in *SpaceX*, Judge Albright distinguished *Collins* on the ground that its requirements were limited to claims for retrospective, not prospective relief. 2024 WL 3512082, at *6. The Fifth Circuit, however, rejected *this exact argument* in *CFSA*:

> First, [Plaintiffs] assert that *Collins* applies only to retrospective relief. But *Collins* did not rest on a distinction between prospective and retrospective relief. As the Sixth Circuit recently explained, Collins's remedial inquiry "focused on whether a harm occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection inflicted harm remains the same whether the petitioner seeks

---

[20] To the extent that the district court in *Energy Transfer* gleaned a different remedial standard for removal claims from the Fifth Circuit's decision in *Cochran*, 20 F.4th 194, that claim should be rejected. As with *Axon*, a companion case to *Cochran* before the Court, that decision addressed solely jurisdiction, not entitlement to relief. *Id.* at 199; *see also Jarkesy*, 34 F.4th at 463 n.17 (post-*Cochran* decision that references *Collins*, but declines to address the question of remedy).

retrospective or prospective relief.

51 F.4th at 631 (cleaned up).[21] Accordingly, having failed to even *attempt* to satisfy *Collins*, Amazon cannot plausibly claim that a preliminary injunction is necessary to prevent irreparable harm on its removal claims.

Specific to its Seventh Amendment claim, Amazon adds, vaguely, that because it has "limited insight into its potential liability," it is suffering irreparable economic harm. Mot. 19. That Amazon cites to exactly zero authority for this proposition is unsurprising, since binding circuit law plainly refutes it. *See generally Mock v. Garland*, 697 F. Supp. 3d 564, 577 (N.D. Tex. 2023) (citing cases holding that economic injury is insufficient to establish irreparable harm when damages are recoverable at the end of litigation unless the potential loss is so enormous that the movant's business is existentially threatened). Further, as addressed above, any economic liability that Amazon may face as a result of a final Board order in this matter would be subject to review in the circuit courts of appeal. Amazon wholly fails to explain why this review is insufficient, or how the future possibility of economic liability is creating a present irreparable injury. And even if this Court agrees with Amazon's argument that the prospect of certain remedies against Amazon produces irreparable harm, the remedy would at most be to enjoin the NLRB from seeking those remedies, not to halt the entire proceeding. As such, Amazon has not shown the prospect of harm required to justify an injunctive on its Seventh Amendment claims.

Finally, as to its combination of functions claims, Amazon makes no affirmative showing

---

[21] Equally unpersuasive is the *Energy Transfer* court's further attempt to reconcile its holding with *Collins* by stating that *Collins* is "readily satisfied" by a plaintiff simply pleading that it is appearing before an unconstitutionally protected actor. 2024 WL 3571494, at *4. Setting aside the need for a specific action to challenge, this standard does not even require plaintiffs to satisfy either of the first two requirements of *Collins*, as interpreted by the Fifth Circuit in *CFSA*—i.e., a stated desire to remove the insulated actor by the President, and an inability to do so based on the removal provision. 51 F.4th at 632.

of any irreparable harm beyond those discussed above. Accordingly, no injunction can issue.

### III.   The balance of the equities and the public interest factors counsel against granting a preliminary injunction.

Amazon cannot show that its alleged harm outweighs the vast harm that an injunction of the NLRB's processes would inflict on the public, the parties involved in this proceeding, and those not before the Court. Long ago, the Supreme Court recognized that employees' right under the NLRA choose whether or not "to bargain collectively through representatives of their own choosing" is a "fundamental right." *Jones & Laughlin*, 301 U.S. at 33. Effectuating that fundamental right is at the center of the administrative proceeding that Amazon seeks to enjoin, because in its own words, even though ALU won by over 500 votes, "Amazon denies that the ALU should have been certified as the exclusive collective-bargaining representative of any employee" and "refus[ed] to bargain with the ALU in order to 'draw' a refusal to bargain ULP allegation." Mot. 3, 5. The harmful effect of halting the enforcement of duly enacted laws, especially those protecting fundamental rights, is particularly acute here, as discussed below.

First, the law that Amazon now challenges, the NLRA, was enacted in 1935 to help pull the country out of the Great Depression, and has already withstood forceful attacks on its constitutionality, not unlike those brought by Amazon here. *See Jones & Laughlin*, 301 U.S. at 47 (rejecting employer's Seventh Amendment challenge to the NLRA); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938). "[G]reat weight" should be given to "the fact that Congress already declared the public's interest and created a regulatory and enforcement framework." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 760 (8th Cir. 2003); *see also Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 442, 445 (2024) (four-Justice concurrence) ("Long settled and established practice may have great weight in interpreting constitutional provisions about the operation of

government," and a relevant consideration for courts is "[t]he way our Government has actually worked, over our entire experience . . . .") (cleaned up).

Second, unlike many other federal statutes, the NLRB provides the only mechanism for effectuating these fundamental rights, as there is no private right of enforcement. *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.,* 309 U.S. 261, 265–66 (1940). This means that, when agency proceedings are enjoined, parties have no way to protect their fundamental rights under the Act. Depriving employees of the only avenue to seek redress for violations of their fundamental rights under the NLRA cannot serve the public interest, particularly when Amazon can obtain an adequate remedy in a court of appeals immediately after the Board issues the decision that Amazon seeks to interfere with here by enjoining it.

Third, while any injunction here would be limited solely to the parties to this case, the constitutional claims being brought are present in virtually every other Board proceeding. This has not gone unnoticed by parties, as the number of suits seeking to enjoin NLRB proceedings on these speculative constitutional claims continues to grow.[22] Simply put, granting an injunction here gravely interferes with the enforcement of the NLRA, a law "enacted by representatives of [the] people," and therefore constitutes a "form of irreparable injury" to the public. *See, e.g.*, *Tex. All. for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020). If Amazon's positions were accepted, nearly every unfair-labor-practice case even tenuously connected to this district would be susceptible to indefinite injunctions. The Court should decline the invitation to handcuff the NLRB at the expense of employees and the public interest.

Finally, the immense public interest and equitable considerations disfavoring an

---

[22] *See* Braden Campbell, *Floodgates Are Open On NLRB Constitutionality Challenges*, Law360 (Aug. 27, 2024 8:34:49 PM), https://www.law360.com/employment-authority/labor/articles/1873863.

injunction here are brought into focus by examining the specific circumstances of this case. Employees freely chose to select the ALU as their representative in 2022, yet their choice has not yet been effectuated because of Amazon's legal challenges. Although Amazon is certainly entitled to exercise its legal rights through appropriate channels, its latest gambit in filing this suit only serves to introduce more unwarranted delay. Courts have long recognized that delays in initial contract bargaining cause irreparable harm to employees and the certified union. *E.g.*, *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 49–50 (1987) (employer's refusal to bargain "disrupts the employees' morale, deters their organizational activities, and discourages membership in unions.") (quoting *Franks Bros Co. v. NLRB,* 321 U.S. 702, 704 (1944)). The Board has adopted expedited procedures for "technical 8(a)(5)" cases testing initial certifications to ameliorate the impact of this delay. NLRB Casehandling Manual, § 10282.2 (instructing Regions to file Motion for Summary judgment "within 7 days after respondent files its answer in a technical 8(a)(5) case"). So while Amazon stands to benefit from having the enforcement of the NLRA halted, the hidden costs it shifts onto others should not be lightly cast aside.

Indeed, Amazon's interest in obtaining an injunction at this late stage of the administrative proceedings is slight, and the equities cut sharply against it. For reasons that remain unexplained, Amazon waited until *nearly three years* after ALU's filing of the initial representation petition to bring these claims against the Board. During this time, Amazon has proceeded through an NLRB representation election involving thousands of employees, an objections hearing lasting dozens of days, injunction proceedings in federal court, and hundreds of pages of briefing (if not more). Throughout all these proceedings, the constitutional claims that it now brings were present and available for Amazon to raise. Yet only *now* does Amazon raise them, along with a claimed need for emergency relief from this court, notwithstanding that

the only thing left standing between Amazon and an Article III court of appeals would be the issuance of a "technical" decision by the Board on the General Counsel's Motion for Summary Judgment—a decision which Amazon says it expects in the "imminent future." Compl. ¶ 35.[23]

This Circuit has denied injunctions due to dilatory filings in circumstances far graver than those present here. *E.g.*, *Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006) (denying request for stay of execution by inmate on death row based solely on "dilatory filing," without assessing merits of claims); *see also Benisek v. Lamone*, 585 U.S. 155, 160 (2018) (per curiam). In short, Amazon's inexplicable delay, standing alone, serves as a strong (perhaps dispositive) factor in denying the requested equitable relief.

## CONCLUSION

For the forgoing reasons, Amazon's motion for a preliminary injunction should be denied.

Respectfully submitted,

---

[23] For this reason, the NLRB reserves the argument that Amazon cannot succeed on the merits of these claims because, under the doctrine of laches, it inequitably delayed in bringing them. *See Cochran*, 20 F.4th at 211 ("[E]ven if Congress did not divest jurisdiction," traditional equitable doctrines like exhaustion, "may prevent district courts from hearing challenges to ongoing administrative enforcement proceedings.").

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
* Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

CHRISTINE FLACK
*Supervisory Attorney*

MICHAEL S. DALE
*Trial Attorney*

<u>*s/ Tyler Wiese*</u>
TYLER WIESE
*Senior Trial Attorney*
M.N. Bar No. 0392601
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (952) 703-2891
tyler.wiese@nlrb.gov

Dated this 19th day of September, 2024.

## CERTIFICATE OF SERVICE

I certify that on September 19, 2024, I filed the foregoing document with this Court using the CM/ECF filing system, and a copy is being served on the ECF Filers electronically by the Notice of Docket activity.

<u>s/ *Tyler Wiese*</u>
TYLER WIESE
*Senior Trial Attorney*
M.N. Bar No. 0392601
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (952) 703-2891
tyler.wiese@nlrb.gov